684 F.2d 324
 1982-2 Trade Cases 64,912
 John WOOLEN, et al., Plaintiffs,
Carl Whorton, et al., Intervenors-Appellants,
v.
SURTRAN TAXICABS, INC., et al., Defendants-Appellees.
Ken WHORTON, et al., Plaintiffs,
Carl Whorton, et al., Intervenors-Appellants,
v.
CITY OF DALLAS, TEXAS, et al., Defendants-Appellees.
 No. 81-1063.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 30, 1982.
 
 The Law Offices of John F. Bass, P. C., John F. Bass, Dallas, Tex., for intervenors-appellants.
 John E. Kennedy, Dallas, Tex., for other interested parties.
 Stan McMurry, Dallas, Tex., for Surtran Taxi-Cab.
 Paul C. Isham, Richard E. Henderson, Fort Worth, Tex., for City of Fort Worth.
 Kolodey & Thomas, Tom Thomas, Joseph P. Paonessa, Robert F. Maris, Dallas, Tex., for Campisi.
 Appeal from the United States District Court for the Northern District of Texas.
 Before BROWN, GOLDBERG and POLITZ, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 This case presents us with both unique facts and issues within the context of an antitrust class action challenging the Dallas/Fort Worth airport's restriction of solicitation of taxicab passengers to limited holders of permits. The controversy surrounding the antitrust claim which forms the merits of this case pales in comparison to this donnybrook between two factions of plaintiffs, the Woolen/Campisi (Campisi) group and the Whorton group. The loser in the first round, the Whorton plaintiffs, sought exclusion from the class suit filed by the Campisi plaintiffs, or intervention in that suit, alleging inadequate representation and imposition of a class attorney antagonistic to their interests. The District Court denied intervention, certified the class as a F.R.Civ.P. 23(b)(2) suit, and thus in practical effect denied exclusion.[1] Unfortunately, although too frequently true, a ruling in the District Court made to avoid delay has itself engendered more delay. At the outset we face the threshold question of whether we have jurisdiction to address the Whorton's interlocutory appeal and the intertwined issue of whether a member of a class may intervene as of right. We find that the denial of intervention of right is an appealable order and that a class member may theoretically intervene in a class action. Because the District Court's findings on the issue of intervention are not adequate, we reverse and remand.
 
 A Touch of Class
 
 2
 The underlying litigation in which the Whorton plaintiffs seek to intervene or from which they seek to be excluded is an antitrust action stemming from the establishment by the cities of Dallas and Fort Worth of the D/FW Surtran System to provide ground transportation for the D/FW airport. Surtran apparently accepted competitive bids for the privilege of picking up passengers at the airport. The winning bid was submitted by Yellow Cab of Dallas, Inc. and Fort Worth Cab and Baggage Company who together formed Surtran Taxicabs, Inc., which contracted with Surtran System to pick up taxicab passengers at the airport for transportation to points in the ten counties surrounding the airport. The contract between Surtran System and Surtran Taxicabs set the rates to be charged, and provided that Surtran System would be paid seventy-five cents per trip plus fifty percent of all profits above a five percent operating profit. Both Dallas and Fort Worth adopted ordinances providing that only holders of permits issued by the airport board may provide ground transportation from the airport. The effect of these ordinances was that only Surtran Taxicabs, as the sole holder of a permit, could pick up taxi passengers at the airport.[2]
 
 
 3
 On May 22, 1978, plaintiffs John Woolen, Jack Stephens, and John D. Campisi, individually and on behalf of a class of taxi drivers filed suit against Surtran Taxicabs, the City of Dallas, City of Fort Worth, and three surrounding cities.[3] The Campisi class action suit alleged that the arrangement between the cities and Surtran Taxicabs violated the Sherman Act by both restraining trade and creating a monopoly, in violation of Sections 1 and 2 of the Act, 15 U.S.C. §§ 1, 2. The initial complaint sought both injunctive relief and treble damages on behalf of taxicab drivers who held permits to operate cabs within the ten-county region surrounding the airport. Two weeks later, on June 6, 1978, the Campisi plaintiffs amended their complaint to add Yellow Cab as a defendant and to add approximately 50 additional named representatives as class members, including the Dallas Taxicab Association. On that same day, the Whorton plaintiffs filed over 200 requests for exclusion from the Campisi suit, alleging that they would not be represented adequately and that the suit would not be prosecuted vigorously since at least two of the three named members of the Woolen class suit were members of the Dallas Taxicab Association, a nonprofit association of taxicab drivers operating in Dallas and formed by Yellow Cab Co., itself a defendant in this lawsuit. Ten days later, the Whorton plaintiffs filed a separate suit naming over 200 individual plaintiffs, but not in the form of a class action, seeking to recover treble damages for the antitrust violations.
 
 
 4
 On June 29, 1978, the Campisi plaintiffs filed a motion to consolidate their action with the Whorton plaintiffs and to designate the Campisi's attorney, Tom Thomas, as lead counsel. In November 1978, the defendants' subsequent motion to dismiss was denied by the District Court. In December 1978, the Campisi plaintiffs moved for class certification to represent a class of all licensed taxicab drivers in the ten county area, a class estimated to be between 2000 and 2500 persons. The class included Woolen and 50 other named plaintiffs as well as the Dallas Taxicab Association. The motion requested certification under Rule 23(b)(2) and (b)(3). In February 1979, the Campisi and Whorton cases were consolidated for purposes of discovery and a hearing to determine class certification was set for late April and subsequently rescheduled for May 1979. In May 1979 the case was reassigned to another District Judge.
 
 Trying to Get to the Head of the Class
 
 5
 In August 1979, four of the Whorton plaintiffs filed a motion to intervene in the Campisi case under Rule 24(a)(2), alleging that they had an interest in the transaction, were so situated that the disposition of the action might impair or impede their ability to protect that interest, and were not adequately represented by existing parties.[4]
 
 
 6
 In October 1979, the four Whorton plaintiffs seeking to intervene filed "Requested Findings of Fact and Conclusions of Law in Opposition to Class Certification", alleging that the Campisi case should not be certified as a class action. The filing of this opposition is one of the more graphic examples of the antagonism and conflict between the Campisi and Whorton groups. The relations between the Campisi and Whorton plaintiffs continued to deteriorate for the next year as the attorneys for both groups were less than cooperative in discovery attempts.
 
 
 7
 According to the docket sheet, on October 9, 1979, after a hearing, the motion to intervene was granted. The record does not include a copy of the District Judge's order granting the motion and no reference is made to the granting of this motion in the subsequent December 1980 denial of the motion to intervene. In late October 1979, the District Judge held a hearing on class certification. Fourteen months later, on December 31, 1980, the District Judge filed an order certifying the Campisi suit as a 23(b)(2) class action and finding the Campisi plaintiffs adequate representatives for purposes of the class action.[5] The class was defined as all taxicab operators who held permits to operate taxicabs issued by the municipalities located within the ten county area. Campisi's attorney, Tom Thomas, was appointed lead class action counsel. In addition, the District Judge denied the motion of the four Whorton plaintiffs to intervene.[6] Although the District Judge did not rule on the motion for exclusion from the class suit, filed by the Whorton plaintiffs the practical effect of certification under (b)(2) was to deny the right to opt out to these class members. See note 1, supra. From this December 31, 1980 order the Whorton plaintiffs appeal.
 
 United We Fall, Divided We Stand
 
 8
 Why, one might wonder, would two groups of taxicab drivers whom one would expect to be aligned against one common set of defendants, instead attempt to keep the other from active participation in the lawsuit? Each set of plaintiffs has tried to inhibit discovery by the other set. The Campisi group has worked to keep the Whorton group from intervening while the Whorton group has been busy trying to defeat the certification of the Campisi group. What we have in the final analysis is two factions of plaintiffs, each seeking to be represented by the attorney of their choice, and each seeking to get through the courtroom door first. While the underlying claim is the same, the Campisi plaintiffs seek injunctive relief as evident from their initial motion for certification. The Whorton group, on the other hand, is concerned primarily with damages.
 
 Tax(i)ation Without Representation
 
 9
 In this appeal, the Whorton plaintiffs basically argue that the District Judge's order of December 31, 1980 results in their being locked into a class action in which they are not adequately represented, in which their interests are antagonistic to other members of the class, and in which they have no desire to participate unless they are allowed representation by the attorney of their choice. They assert that the class action device has been abused to preempt their claim through a sham class action filed by the Campisi group and that the District Judge's orders have conclusively determined their rights in such a way that review on appeal from a final judgment will be ineffective. Through certification under Rule 23(b)(2), they fear that their claims for damages may eventually be lost should the Campisi class action fail on the merits or settle. To support these claims, the Whorton plaintiffs allege a pattern of delays, less than diligent prosecution by Campisi and the class attorney, antagonism between the two groups of plaintiffs, and conflicts of interest, both within the class and between Campisi and the defendants. For instance, they allege that the Dallas Taxicab Association, certified to represent the drivers, has members from only one of the ten counties, and was originally formed by Yellow Cab, one of the defendants, for the purpose of helping Yellow Cab drivers. Thus, the Whorton plaintiffs contend that the representation is inadequate. In addition, they allege that three of the four named Campisi plaintiffs are members of the Dallas Taxicab Association. Not only are there connections between the class representatives and defendant Yellow Cab, but, according to the Whorton group, there are connections between Campisi's lawyer and Yellow Cab. The Whorton plaintiffs charge that Campisi's attorney chose certification as a (b)(2) class action and included the denial of the request for intervention, without any specific request by the court, an assertion substantiated in a letter to the District Judge from the attorney for the defendants. Through a series of statements and examples, the Whorton plaintiffs attempt to demonstrate inadequate representation by class members and their counsel and to create the implication that the Campisi representatives are likely to compromise the Whorton claims for damages because of the connections between the Campisi plaintiffs and the defendants. While several examples are given of the inadequacy of representation, both by the named class representatives and their attorney, we find it unnecessary to provide more than the bare outline so far sketched.
 
 
 10
 In this appeal, the Whorton plaintiffs raise several issues. First they contend that they have an absolute right to intervene under F.R.Civ.P. 24(a)(2) because their interest is not adequately represented. Second, they maintain that the District Judge's order of December 31, 1980 was an abuse of discretion by eliminating the representation of the Whorton plaintiffs, including those 200 who originally requested exclusion from the Campisi suit. This abuse is demonstrated by certifying a class action with no opportunity to opt out or without any subclasses, denying exclusion to the 200 drivers, denying intervention to the representatives of these 200 drivers,[7] staying the individual damage actions of these drivers, and imposing antagonistic class representation and counsel on these drivers through mandatory inclusion in the class action.
 
 
 11
 The Whorton plaintiffs provide several arguments to support jurisdiction of this appeal since there is no certification by the District Judge under 28 U.S.C. § 1292(b). They contend that this Court has jurisdiction under 28 U.S.C. § 1291 to review as a final decision the denial of intervention of right and the denial of right to counsel. Although the District Court made no order specifically denying or disqualifying counsel, the Whorton plaintiffs argue that the appointment of Campisi's attorney as class counsel and the denial of the right to intervene are in combination functionally equivalent to the denial of right to counsel. In addition, the Whorton plaintiffs maintain that the practical effect of the District Court order is to stay their action and enjoin them from prosecuting their individual suits so as to constitute an injunction for purposes of 28 U.S.C. § 1292(a)(1). Jurisdiction is also premised on the all writs provision of 28 U.S.C. § 1651 under which the Court may issue mandamus. The Whorton plaintiffs contend that the orders in the District Court were such a gross abuse of discretion as to constitute a usurpation of power and an abdication of judicial responsibility such that mandamus could issue. By depriving the Whorton plaintiffs of their right to representation, they contend that the District Court has denied them of due process. Lastly, the Whorton plaintiffs attempt to come under the collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), both on the intervention issue and the representation issue. They contend that the orders of the District Judge resolved issues completely separate from the merits and ones which will be effectively unreviewable on appeal. They distinguish both Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) and Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), largely on the basis of their intervenor status.
 
 
 12
 An Interlocutory Order That's Lost Its Appeal
 
 
 13
 The basic response of the Campisi group is that the District Court's order of December 31, 1980 is interlocutory and therefore not appealable under 28 U.S.C. § 1291 as a final order. They rely primarily on Coopers & Lybrand in which the Supreme Court found that a District Court's order denying class certification was not appealable as a final order under 28 U.S.C. § 1291. In that case the Supreme Court restated the requirements for appealability of interlocutory orders as formulated first in Cohen, stating "(t)he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand, 437 U.S. at 468, 98 S.Ct. at 2457, 57 L.Ed.2d at 357. The Campisi plaintiffs contend that the intervention issue is so intertwined with the class certification issue and thus may not be reviewed on an interlocutory appeal. For support, Campisi cites our opinion in Zylstra v. Safeway Stores, Inc., 578 F.2d 102 (5th Cir. 1978), in which we indicated that where the issue of disqualification of counsel was so intertwined with the issue of certification of a class such that the two issues could not be separately decided, there could be no separate final order for purposes of § 1291 on the intertwined disqualification issue. In North American Acceptance Corp. v. Arnall, Golden & Gregory, 593 F.2d 642 (5th Cir.), cert. denied, 444 U.S. 956, 100 S.Ct. 436, 62 L.Ed.2d 328 (1979), we also determined that the denial of a motion to disqualify counsel within the class action context was not appealable because it was not conclusive or effectively unreviewable on appeal from a final judgment. Campisi also argues that the issue of adequacy of representation raised in the motion to intervene of right has previously been decided as part of the requirements for certification under Rule 23(a)(4) and thus, even if we were to have jurisdiction to hear the appeal of the order denying intervention of right, there is no merit or basis for this intervention. Finally, Campisi maintains that since the Whorton plaintiffs failed to seek certification of the issue by the District Court under 28 U.S.C. § 1292(b), mandamus under § 1651 is not properly available.
 
 
 14
 While the defendants in this class action, Surtran Taxicabs, Yellow Cab and Fort Worth Cab and Baggage Co., indicate in their brief that they are not directly interested in the dispute over intervention, they contend that this Court has no jurisdiction over this appeal because the denial of intervention is not sufficiently important to justify interlocutory review nor sufficiently independent of the cause to require consideration prior to a final judgment on the merits of the case. They assert that the interest of the Whorton plaintiffs is not impaired so long as consolidation is possible. While we agree with the defendants that consolidation may well alleviate all problems in this case, allowing the Whorton plaintiffs to participate through counsel of their own choosing, the availability of consolidation does not foreclose the right to appeal the denial of intervention nor make that denial any less final.
 
 Let's All Join In
 
 15
 The primary issue facing this Court is whether we have jurisdiction under any theory to hear this appeal of the District Court order. The law of this Circuit is clear that the denial of a motion to intervene of right under Rule 24(a) is appealable. Weiser v. White, 505 F.2d 912, 916-18 (5th Cir.), cert. denied, 421 U.S. 993, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975); United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826, 841 (5th Cir. 1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). In contrast, the denial of a motion for permissive intervention under Rule 24(b) is not appealable unless there is an abuse of discretion. See Brotherhood of R. R. Trainmen v. Baltimore & Ohio R. R. Co., 331 U.S. 519, 524-25, 67 S.Ct. 1387, 1390, 91 L.Ed. 1646, 1649-1670 (1947); 3B Moore's Federal Practice P 24.15 (2d ed. 1982); 7A Wright & Miller, Federal Practice and Procedure, § 1923. The practical effect of this rule that denial of intervention of right is appealable while denial of permissive intervention is not appealable except for abuse of discretion is to require that this Court review the merits of a claim in intervention in order to determine whether or not the District Court order denying intervention is appealable.
 
 
 16
 If the appellate court finds either that a claim of right to intervene was without merit or that their request for permissive intervention was denied without an abuse of discretion, the action of the district court is not appealable, the appellate court has no jurisdiction, and the appeal should be dismissed. But if the court decides that appellant was correctly alleging a right to intervene or that refusal of permissive intervention constituted an abuse of discretion, the order is appealable and the court has appellate jurisdiction to consider the denial by the lower court.
 
 
 17
 Weiser v. White, 505 F.2d at 916.
 
 
 18
 The Campisi plaintiffs and the defendants contend that under the peculiar facts of this case the denial of intervention of right is not appealable in light of the Supreme Court's opinion in Coopers & Lybrand. We disagree. When analyzed properly-unfortunately the District Judge in this case failed to do so adequately-intervention of right under Rule 24(a) and class action certification under Rule 23 are two separate and distinct theories. By attempting to equate the determination of adequacy of representation for purposes of class action representation under Rule 23(a)(4) with adequacy of representation for purposes of intervention under Rule 24(a)(2), those opposed to the Whorton intervention seek to hide behind Coopers & Lybrand to forestall appellate review at this point. But the impedimenta concerning the interlocutory aspect of one is not necessarily exchangeable as to the other. Denial of intervention of right is final as to the intervenors who are then foreclosed from participation in that status in the lawsuit. In Coopers & Lybrand, the Supreme Court, in articulating reasons for excluding orders denying class certification from the collateral order exception, indicated as one of its reasons that class certification was an order subject to revision in the District Court under F.R.Civ.P. 23(c)(1). Under intervention of right, there is no such conditional quality attached to the order. Nor is a plaintiff denied intervention free to proceed on his individual claim in the same manner as a plaintiff denied class action certification. While it is arguable that Coopers & Lybrand is not applicable to the case before us where plaintiffs are appealing from an order granting class certification, we need not reach this issue in any form other than to indicate that the rationale of Coopers & Lybrand concerning class action certification is not applicable to intervention of right.
 
 
 19
 Nor is the notion of adequacy of representation sufficient to satisfy the prerequisites for a class action under Rule 23(a)(4) necessarily equivalent to the adequacy of representation contemplated by Rule 24 within the context of intervention of right. In the Advisory Committee's note to the 1966 amendment to Rule 24(a), the Committee indicated that the rule, as amended, no longer contained the prior requirement that as a condition of intervention an applicant be bound. Rather, "(a) class member who claims that his 'representative' does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack. Rather he should, as a general rule, be entitled to intervene in the action."[8]
 
 
 20
 From this statement it is clear that the Committee contemplated that one who was already a class member could intervene in a lawsuit. It is also apparent that the notion of adequacy for purposes of Rule 23(a)(4) is one having more concern with the res judicata effects of a judgment on absent members of a class. Without adequate representation a judgment cannot bind those absent class members. Rule 24(a), as amended, specifically drops the requirement that a party is or may be bound by a judgment, substituting instead a practical test, requiring only that the disposition of the action "may as a practical matter impair or impede his ability to protect that interest, ..." (emphasis added). As revised, the Rule clearly leaves room for a situation where one's interest may be impaired by inadequate representation without necessarily requiring a res judicata effect. One therefore could intervene, claiming inadequacy of representation without necessarily claiming that he will be precluded by the other action. This would appear to establish a lower threshold or showing of inadequacy for purposes of intervention as opposed to class action certification. The adequacy of representation in Rule 23(a)(4) is that essential to due process under Hansberry v. Lee before absent class members can be bound. The problem of intervention within a class action would appear to arise most likely in a class certified under 23(b)(1) or (b)(2), rather than under a class certified under 23(b)(3). A class member who does not consider that he is being represented adequately has the option in a (b)(3) action to opt out under 23(c)(2) or to enter an appearance through counsel of his choosing. Should he choose to opt out of the lawsuit, the plaintiff would not be bound. The concept of intervention within a class certified under 23(b) (2) balances the more likely impairment of the individual's interest since he is unable to opt out of this class. Also by allowing intervention, subsequent collateral attacks on the due process preclusive effect of a judgment are avoided.
 
 
 21
 Members of classes have been allowed to intervene, often within the context of desegregation or Title VII suits. For example, in Calhoun v. Cook, 487 F.2d 680, 683 (5th Cir. 1973), we indicated that school children members of a class would have a right to intervene if their interests were not adequately represented by existing parties in a school desegregation suit. We have also indicated that in the context of school desegregation suits, the proper vehicle for parents claiming inadequate representation is through intervention, rather than through the filing of another lawsuit. See Adams v. Baldwin County Board of Education, 628 F.2d 895, 897 (5th Cir. 1980); Hines v. Rapides Parish School Board, 479 F.2d 762 (5th Cir. 1973). But see Pate v. Dade County School Board, 588 F.2d 501, 503 (5th Cir.), cert. denied, 444 U.S. 835, 100 S.Ct. 67, 62 L.Ed.2d 44 (1979), where the Court intimated that in that case the right of parents was one of permissive intervention, if at all. Within the context of Title VII cases, we have allowed members of a class to intervene to challenge both settlement offers concerning back pay and subsequent dismissals.
 
 
 22
 Having surmounted the jurisdictional hurdle under the aegis of intervention of right, we now consider whether the Whorton plaintiffs are entitled to intervene of right. If they have no such right, we must dismiss.
 
 
 23
 Rule 24(a)(2) establishes three conditions which must be met for intervention of right. The applicant must (1) claim "an interest relating to the property or transaction which is the subject of the action"; (2) be "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest"; and (3) his interest is not adequately represented by existing parties. In this case the Whorton plaintiffs have claimed an interest in the transaction which is the subject of the action, that is in the alleged antitrust violations. However, the interest is not identical to that of the Campisi plaintiffs who have clearly indicated that at this point their interest is in injunctive relief, while that of the Whorton plaintiffs is in damages. The Whorton plaintiffs have alleged that the disposition of the Campisi class action may as a practical matter impair their ability to protect their interest. Should the Campisi plaintiffs fail on the liability issue in the class action, at least as a practical matter, the Whorton plaintiffs' ability to recover may be impaired. It is possible that any judgment on the issue of liability in the Campisi (b)(2) class action may be binding on the Whorton plaintiffs in a separate action unless they can demonstrate in a subsequent or collateral attack that they were inadequately represented and thus denied due process. Finally, the Whorton plaintiffs have alleged that their interest is not adequately represented by the existing parties. They contend that neither the class representatives nor their attorney adequately presents their position and have failed to protect their interest. On the basis of the pleadings and motions before the District Court, it is clear that the Whorton plaintiffs are "without a friend in this litigation." Atlantis Development Corp. v. United States, 379 F.2d 818, 825 (5th Cir. 1967). The Whorton plaintiffs have alleged that the Campisi plaintiffs have attempted to hamper their discovery, have encouraged burdensome damage interrogatories against the Whorton plaintiffs, and have abandoned any interest in the damage claims. From proceedings in this Court, it is clear that the Campisi plaintiffs, through opposing the motion of intervention and subsequent appeal, are not aligned with the Whorton plaintiffs.
 
 
 24
 The District Court held a hearing on the question of class certification at which the intervenors were allowed to participate. In its order of December 31, 1980, the District Court denied intervention. This order, entitled "Order Certifying Class Action," while containing findings of fact and conclusions of law, made no specific findings or conclusions as to the issue of intervention. This Court, in reviewing motions to intervene in school desegregation suits, has required the District Court to conduct an evidentiary hearing and to enter findings based upon an adequate record. See Adams v. Baldwin County Board of Education, 628 F.2d at 897; Jones v. Caddo Parish School Board, 499 F.2d 914 (5th Cir. 1974). In this case the District Court has provided no indication of why it denied intervention of right and we are thus unable to tell whether the action was based on the proper considerations or perhaps based on some incorrect assumptions such as that class members may not intervene in a class suit. In the order certifying the Campisi class, the District Judge made findings of fact that the class representatives would fairly and adequately protect the interest of the class. See note 5, supra. The first of the subfindings is that "there is no significant antagonism or conflict between the class action representatives and the class." This finding is perhaps the only relevant one to the issue of intervention and it is not clear whether at the time the District Court was considering the intervenors as members of the class. If so, this finding is clearly erroneous since the antagonism between the Whorton plaintiffs who, at least as defined by the District Court, are members of the class, and the class action representatives is too blatant to be ignored. For example, the Whorton plaintiffs had earlier attempted to defeat certification. Based on the filings in this case and the hearing, the District Court could not possibly find no antagonism. However, we think that given the lack of findings of fact specifically relating to the issue of intervention, in this case where the credibility of the parties, both the Campisi representatives and the Whorton plaintiffs, is so essential, this action should be remanded to the District Court to consider again the right to intervene under Rule 24(a)(2) so that this Court is provided with an adequate record on the merits of intervention of right, should this Court need to consider again the right to intervene.
 
 Keeping the Meter Running
 
 25
 From our disposition of this case, we are in no way intimating our opinion on the merits of the claim of intervention of right, other than to indicate that the Whorton plaintiffs have alleged a colorable claim which needs further exploration, perhaps evidentiary detail and findings by the District Court before we could pass on the merits. Nor are we indicating that we consider intervention the best route through this Serbonian Bog. Were this case before us in a different posture we would be free to indicate that consolidation of the Whorton and Campisi cases would offer the most, and perhaps only, manageable solution. Under consolidation, the issue of liability could be tried once and only once, while allowing the parties to be represented by counsel of their choice. With representation satisfactory to each of the two groups, the court could likely avoid a subsequent attack on the adequacy of representation under the guise of res judicata effects should the defendants succeed on the issue of liability or should the Campisi plaintiffs settle with the defendants. Nor need consolidation hinder the Campisi plaintiffs' efforts to proceed. The District Court may stay discovery on the issue of damages until the issue of liability is resolved since the District Court need not, indeed should not, assume that the defendants will be held liable. Discovery exploration of possible potential damages at this early state in the detail sought is obviously inefficient and wasteful of services of counsel. Consolidation also avoids the question of which lawsuit proceeds first. Obviously consolidation will succeed only if the attorneys for both the Whorton and Campisi plaintiffs mend their differences and unite in their efforts to defeat what one assumes is their common enemy, the defendants. Certainly consolidation would benefit the class members, who after all are, or should be, the true focus of these lawsuits.
 
 
 26
 Because of our disposition of this case, we find it unnecessary to reach the issue of whether the order of December 31, 1980, aside from the denial of intervention, is a final order. As witnessed by our finding of jurisdiction on the issue of intervention of right, there is an alternative at this point available to the Whorton plaintiffs and thus we need not consider whether the certification as a (b)(2) action and the practical implication of the denial of the right to opt out results in an order that is reviewable at this stage. Obviously the problems in this case would not have arisen had the District Court certified the action as a (b)(3) action, in which case the Whorton plaintiffs would have had the opportunity to opt out. Certification as a (b) (3) action would also have protected their damage claim. Generally antitrust actions are certified under 23(b)(3) since the usual focus is on treble damages and the Advisory Committee note makes clear that certification under (b)(2) is not appropriate where the primary relief sought is not injunctive. Nor do we reach the question of the appealability of the denial of counsel since the order of December 31, 1980 merely appointed Campisi's attorney as class counsel. The issue of counsel raised by the Whorton plaintiffs appears to be a recasting of the denial of exclusion or intervention and reduces itself to an argument on inadequacy of representation. At this point, when the issue of representation is still open, that is in light of our opinion and the possible alternatives of intervention or consolidation, we see no reason to address this issue.
 
 
 27
 Finally, while we do not approve or agree with much of the prior handling of this case by the District Court, we find no abuse of discretion so gross as to warrant mandamus.
 
 
 28
 Our disposition of this case is in no way intended to restrict the District Judge's ability to take whatever action she sees fit that is consistent with our opinion, including a determination that the cases ought to be consolidated for trial of the common issues.
 
 
 29
 REVERSED AND REMANDED WITH DIRECTIONS.
 
 
 
 [1]
 Although the Whorton plaintiffs filed a request for exclusion from the Campisi suit, at least through the time of oral argument in this case, the District Court had not ruled on the motion. The District Judge certified the class action in this case as a (b)(2) action. Although there is some debate whether in certain circumstances notice must be given to the members of the class with the attendant right to opt out in a (b)(2) action, F.R.Civ.P. 23 requires notice and the opportunity to be excluded specifically only in a (b) (3) action. Thus, at least at this point, the practical effect of certification under (b)(2) is to deny the motion for exclusion. However, since the District Court has not ruled on this motion for exclusion, we need not reach the issue of whether the Whorton plaintiffs have a right to opt out of the class action
 This Court has considered the right to opt out of a class under Rule 23(b)(2) and the right to notice generally within the context of settlements or consent decrees in Title VII cases. In Johnson v. General Motors Corp., 598 F.2d 432 (5th Cir. 1979), we found that where monetary relief was sought in a Title VII case certified under Rule 23(b)(2), notice was required before an absent class member could be barred from pursuing an individual damage claim. In Penson v. Terminal Transport Co., 634 F.2d 989, 992-95 (5th Cir. 1981), after surveying prior Circuit law, we held that a member of a class certified under Rule 23(b) (2) had no absolute right to opt out of the class, although a District Court has the power to require an opt out right under Rule 23(d)(2). See 3B Moore's Federal Practice P 23.55 (2d ed. 1982). Thus, this Court has addressed the opt out requirement in retrospect in the context of the res judicata effect of a prior action and the due process requirements necessary for a prior action to be binding on absent members of a class. The inquiry then generally becomes one of adequacy of representation under the standard of Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). For instance, in this case should the Campisi class action continue as a (b)(2) action without the intervention of the Whorton plaintiffs or the consolidation of these two cases, and should the Campisi plaintiffs either lose on the merits or settle with the defendants, the Whorton plaintiffs could argue in this case or in a separate action the flip-side of the opt out argument, that of adequacy of representation. Although there may be no right to opt out in a (b)(2) action, the judgment is always subject to attack on the premise that those absent members were inadequately represented and thus are not bound. For this reason it is essential that representation of absent class members be adequate from the start.
 
 
 [2]
 Subsequent to the filing of these lawsuits, the exclusion of all but Surtran Taxicabs from providing ground transportation has been modified. The current practice allows all cabs to pick up at the airport by paying a $1.75 pick up fee
 
 
 [3]
 Woolen is no longer a party to this suit
 
 
 [4]
 F.R.Civ.P. 24 provides in part:
 Rule 24. Intervention.
 (a) INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 (b) PERMISSIVE INTERVENTION. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
 
 
 [5]
 The District Judge, in the Findings of Fact specifically found with respect to representation of the class the following:
 E. The class action representatives will fairly and adequately protect the interests of the class.
 
 
 [1]
 There is no significant antagonism or conflict between the class action representatives and the class
 
 
 [2]
 The class action representatives are sufficiently interested in the prosecution of this suit and are sufficiently aware of the issues presented by this suit to assist the class action attorneys in the prosecution of the suit
 
 
 [3]
 The class action representatives are willing to be responsible for the costs of the suit
 
 
 [4]
 Tom Thomas and the firm of Kolodey, Thomas, Dooley, Maris & Lilly (the successor to the firm of Kolodey & Thomas), are able to provide adequate legal counsel to the class and should be designated as lead class action counsel
 (a) Class action counsel have sufficient experience, manpower and facilities to effectively prosecute this suit.
 (b) Class action counsel are willing to advance sufficient funds to pay the costs of this suit.
 
 
 [6]
 In her order of December 31, 1980, the District Judge denied "the motion regarding certification filed by Plaintiffs Ken Whorton, et al. herein on July 11, 1979." The docket sheet shows no filing of such a motion on that date
 As part of the order of December 31, 1980, the District Judge stated:
 G. The provisions of this order do not prohibit, limit or otherwise affect the individual claims of the class members or class representatives, John D. Campisi, Robert Rice, Gene Brown, and the Dallas Taxicab Association for damages.
 
 
 [7]
 Although the Whorton plaintiffs claim to represent some 200 drivers, the motion for intervention was filed by four of the plaintiffs in the Whorton suit. The Whorton suit, although including approximately 200 plaintiffs, was not originally filed as a class action but rather as a multiple joinder case
 
 
 [8]
 In discussing the 1966 amendments to Rule 24(a)(2), the Committee stated the following:
 Original Rule 24(a)(2), however, made it a condition of intervention that "the applicant is or may be bound by a judgment in the action," and this created difficulties with intervention in class actions. If the "bound" language was read literally in the sense of res judicata, it could defeat intervention in some meritorious cases. A member of a class to whom a judgment in a class action extended by its terms (see Rule 23(c)(3), as amended) might be entitled to show in a later action, when the judgment in the class action was claimed to operate as res judicata against him, that the "representative" in the class action had not in fact adequately represented him. If he could make this showing, the class-action judgment might be held not to bind him. See Hansberry v. Lee, 311 U.S. 32 (61 S.Ct. 115, 85 L.Ed. 22) (1940). If a class member sought to intervene in the class action proper, while it was still pending, on grounds of inadequacy of representation, he could be met with the argument: if the representation was in fact inadequate, he would not be "bound" by the judgment when it was subsequently asserted against him as res judicata, hence he was not entitled to intervene; if the representation was in fact adequate, there was no occasion or ground for intervention. See Sam Fox Publishing Co. v. United States, 366 U.S. 683 (81 S.Ct. 1309, 6 L.Ed.2d 604) (1961); cf. Sutphen Estates, Inc. v. United States, 342 U.S. 19 (72 S.Ct. 14, 96 L.Ed. 19) (1951). This reasoning might be linguistically justified by original Rule 24(a)(2); but it could lead to poor results. Compare the discussion in International M. & I. Corp. v. Von Clemm, 301 F.2d 857 (2d Cir. 1962); Atlantic Refining Co. v. Standard Oil Co., 304 F.2d 387 (D.C.Cir.1962). A class member who claims that his "representative" does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack. Rather he should, as general rule, be entitled to intervene in the action.