IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-10980
_____


SECURITIES AND EXCHANGE COMMISSION

Plaintiff - Appellee

v.


FUNDING RESOURCE GROUP, also known as FRG Trust; QUENTIN
HIX; GENE COULTER; STEVEN C ROBERTS; MVP NETWORK, INC, a
Texas corporation; FMCI TRUST; FUNDERS MARKETING COMPANY
INC, a Texas corporation; RAYMOND G PARR; WILLARD VEARL
SMITH; EARL D MCKINNEY; FORTUNE INVESTMENTS LTD, a Nevada
Corporation; ROBERT CORD, also known as Robert F Schoonover;
WINTERHAWK WEST INDIES LTD; IGW TRUST; CAROLYN DON HICKS;
CARL LADANE WEAVER; HOWE FINANCIAL TRUST, an Indiana
corporation solely for purposes of equitable relief; TREDS
FINANCIAL TRUST, defendant solely for purposes of equitable
relief; MARY ANN BAUCE; HAMMERSMITH TRUST LLC, a Tennessee
limited liability company; HAMMERSMITH TRUST LTD, an Irish
corporation; BRIDGEPORT ALLIANCE LLC, a Nevada limited
liability company; LANDFAIR CUSTODIAL SERVICES INC, a
Tennessee corporation; MICROFUND, a Nevada limited liability
company; AMERICAN PACIFIC BANK & TRUST INC, an Antiguan
corporation; EUROFUND INVESTMENT INC, a Tennessee
corporation; B DAVID GILLILAND; MELODY ROSE

Defendants - Appellees

v.

SALISH INVESTMENTS; FHA SERVICES; HERBERT PRESS; PRESS
FAMILY LP; KUMARASUNDARAM SITTAMBALAM; REX WELLER; VISTA
CAPITAL; GALAXY ENTERPRISES TRADING LTD; SITTAMBALAM
RAJASUNDARAM; BILL FINCH; ROSIE FAN; PLENITUDE LTD; LAURA
NISHIMURA

Movants - Appellants

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:98-CV-2689)
_____

September 8, 2000

Before KING, Chief Judge, PARKER, Circuit Judge, and KAZEN, District Judge.[*]

PER CURIAM:[**]

Movants-Appellants appeal the district court's denial of their motion to intervene in a civil enforcement action brought by Plaintiff-Appellee the Securities and Exchange Commission against Defendants-Appellees. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Movants-Appellants Salish Investments, FHA Services, Herbert Press, Press Family LP, Kumarasundaram Sittambalam, Rex Weller, Vista Capital, Galaxy Enterprises Trading, Ltd., Sittambalam Rajasundaram, Bill Finch, Rosie Fan, Plenitude, Ltd., and Laura Nishimura ("Appellants") brought an action in the United States District Court for the Middle District of Florida, Tampa Division (the "Florida action"), against Sterling Management Services,

---

[*] Chief Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

Inc., Frederick J. Gilliland, Sterling Assets Services, Ltd., Marian Jones, B. David Gilliland,[1] Hammersmith Trust, LLC, August William Christian Mohr, Carlos Ferreto, Bridgeport Alliance, Ltd., First Global International, Inc., and Eagle Asset Management, Inc. (collectively, the "Florida defendants"). Appellants alleged that the Florida defendants had induced them to invest in monthly high-yield investment programs and short-term quick-turnaround programs, and then failed to pay profits or principal, or return funds upon Appellants' request. Appellants' May 1999 amended complaint asserted claims for fraud, fraudulent conveyance, and conversion under Florida state law, as well as violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), see 18 U.S.C. § 1961 et seq., Section 10 of the Securities Exchange Act of 1934 (the "Exchange Act"), see 15 U.S.C. § 78(b), and Rule 10b-5 under the Exchange Act, see 17 C.F.R. § 240.10b-5.[2] They sought relief in the form of damages in the amount of the funds they invested; a judgment setting aside a mortgage taken out on property purchased with

---

[1] B. David Gilliland's full name is Benjamin David Gilliland. Appellants referred to "David Gilliland" in their complaint, and the SEC named "B. David Gilliland" in the enforcement action. We will likewise refer to Benjamin David Gilliland as "B. David Gilliland."

[2] Although Appellants asserted that the Tampa district court had jurisdiction over its action because their claims arose from the Securities Act of 1933 (the "Securities Act"), see 15 U.S.C. § 77a et seq., as well as RICO and the Exchange Act, the complaint did not list a claim under that statute.

invested funds; treble damages under RICO; a judgment declaring that Frederick Gilliland, Sterling Management Services, Inc., and Sterling Asset Services, Ltd. were each other's alter ego; and various injunctions.

Hammersmith Trust, LLC, B. David Gilliland, and Bridgeport Alliance, LLC, defendants in the Florida action, are also involved in a civil enforcement action filed by the Securities and Exchange Commission (the "SEC") in the United States District Court for the Northern District of Texas, Dallas Division (the "enforcement action") in November 1998. The SEC brought this action against Funding Resource Group, Quentin Hix, Gene Coulter, Steven C. Roberts, MVP Network, Inc., FMCI Trust, Funders Marketing Company, Inc., Raymond G. Parr, Willard Vearl Smith, Earl D. McKinney, Fortune Investments, Ltd., Robert Cord, Winterhawk West Indies, Ltd., IGW Trust, Carolyn Don Hicks and Carl Weaver (the "enforcement action defendants"). The SEC contended that the enforcement action defendants participated in fraudulent Ponzi or pyramid schemes orchestrated by Funding Resource Group, MVP Network, and FMCI Trust, in which the defendants sold unregistered (and allegedly nonexistent) "prime bank" securities issued by Funding Resource Group, MVP Network, and FMCI Trust. The SEC's second amended complaint asserted that the enforcement action defendants had violated (1) § 10(b) of the Exchange Act and Rule 10b-5; (2) § 17(a)(1) of the Securities Act of 1933 (the "Securities Act"), see 15 U.S.C. § 77e; (3)

4

§§ 17(a)(2) – (3) of the Securities Act, <u>see</u> 15 U.S.C. § 77q(a); and (4) §§ 5(a) and 5(c) of the Securities Act, <u>see</u> 15 U.S.C. § 77v(a).

In addition, the SEC alleged that Hammersmith Trust, LLC, B. David Gilliland, and Bridgeport Alliance, LLC, among others,[3] received some of the approximately $14 million in proceeds of the enforcement action defendants' allegedly illegal sales. Seeking to disgorge these funds, the SEC brought a fifth claim for unjust enrichment against Hammersmith Trust, LLC, B. David Gilliland, Bridgeport Alliance, LLC, and the other equitable defendants. The district court subsequently entered orders against the equitable defendants, including Hammersmith Trust, LLC, B. David Gilliland, and Bridgeport Alliance, LLC, that froze their assets, required them to submit an accounting, enjoined them from destroying records, and appointed Michael J. Quilling as receiver over their assets.[4]

---

[3] The SEC also alleged that Howe Financial Trust, Treds Financial Trust, Mary Ann Bauce, Hammersmith Trust, Ltd., Microfund, LLC, Landfair Custodial Services, Inc., American Pacific Bank & Trust, Inc., Eurofund Investment Inc., and Melody Rose (collectively with B. David Gilliland, Hammersmith Trust, Ltd., and Bridgeport Alliance, LLC, the "equitable defendants") received wrongfully obtained funds from defendants.

[4] The district court initially froze these parties' assets and appointed Michael J. Quilling as receiver in orders dated January 21, 1999 and March 11, 1999. It unfroze the assets pursuant to an agreed order dated March 26, 1999. When B. David Gilliland and the Hammersmith Trust entities failed to make the payments to the receiver required by the March 26 order, the district court held B. David Gilliland in contempt of court. On July 22, 1999, the district court entered another order freezing

5

On June 11, 1999, Appellants brought a motion to intervene in the enforcement action. Appellants asserted that they were defrauded through the same Ponzi scheme at issue in the enforcement action and induced to purchase types of unregistered securities substantially similar to those sold by the enforcement action defendants. Appellants specifically contended that the enforcement action defendants had enlisted "the additional parties listed in the Florida [action] to defraud [Appellants] into investing in the same form of foreign investment." Appellants alleged that (1) B. David Gilliland "was one of the masterminds behind this international scheme" and created an "elaborate web of corporations . . . to facilitate this scheme and to launder the money received from investors;" (2) Fred Gilliland assisted B. David Gilliland in his unlawful enterprise; (3) Hammersmith Trust, LLC and Hammersmith Trust, Ltd.[5] (collectively, the "Hammersmith Trust entities") constituted alter egos of B. David Gilliland; and (4) Bridgeport Alliance, Ltd. (a defendant in the Florida action) was possibly a sister corporation to, alter ego of, or the same corporation as Bridgeport Alliance, LLC (an equitable defendant in the enforcement action). The SEC, B. David Gilliland, Hammersmith

---

the parties' assets, enjoining them from destroying books and records, requiring them to make interim accountings, authorizing expedited discovery, and reinstating the receiver.

[5] Hammersmith Trust, Ltd. was not named as a defendant in the Florida action.

6

Trust, Ltd., and Hammersmith Trust, LLC filed oppositions to the motion.

The district court addressed the motion to intervene at a hearing held on July 22, 1999. The SEC informed the court that it did not consent to the intervention. The receiver informed the court that he was going to "go find [the] money" in possession of Hammersmith Trust, LLC[6] and "use it to give to all the Hammersmith investors, pro rata, including [Appellants]." The receiver also stated that he had discussed this plan with Appellants' counsel and that he thought Appellants' counsel was "happy [with the plan] at this point." Appellants' counsel, however, proceeded to argue the merits of the motion to intervene to the court. After questioning Appellants' counsel with regard to whether the Appellants needed the SEC's consent to intervene and whether the SEC adequately represented the Appellants' interest, the court stated:

> Let me tell you about . . . your intervention, I'm going to deny it without prejudice at this time. Let's get on down the road and let's see – and you visit with Mr. Quilling, because unlike [the SEC], Mr. Quilling's only mission in life is to recover monies for people like you represent.
>
> And if you feel like he's not doing a good job of it, you get back with me. But right now I'm going to deny [the motion to intervene].

---

[6] The receiver was referring to the Nevis, West Indies-based Hammersmith Trust, LLC.

In its order filed July 27, 1999, the district court denied Appellants' motion to intervene without prejudice.[7] Appellants timely appeal.

## II.  DISCUSSION

### A.  Jurisdiction and Standard of Review

Under the law of this circuit, a denial of a motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) is an appealable final decision.  See Edwards v. City of Houston, 78 F.3d 983, 992 (5th Cir. 1996) (en banc).  We review a denial of such a motion de novo.  See id. at 995.  This court has provisional jurisdiction to review a denial of a motion for permissive intervention under Rule 24(b) for an abuse of discretion.  See id. at 992.  Unless we find an abuse of discretion, we lack jurisdiction over the permissive intervention claim and are constrained to dismiss the appeal thereof.  See Woolen v. Surtran Taxicabs, Inc., 684 F.2d 324, 330-31 (5th Cir. 1982).

### B.  Intervention as of Right

Appellants contend that they are entitled to intervene as a matter of right pursuant to Rule 24(a)(2).  That section imposes four requirements:  (1) the applicant must file a timely

---

[7]  The district court also dismissed Appellants' counsel's application to appear pro hac vice as moot.

8

application; (2) the applicant must claim an interest in the property or transaction that is the subject of the action; (3) the applicant must show that disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties to the litigation. See FED. R. CIV. PROC. 24(a)(2). "[A]bsence of even one of the four factors required by rule 24(a)(2) is sufficient to defeat intervention . . . ." United States v. Franklin Parish Sch. Bd., 47 F.3d 755, 758 (5th Cir. 1995).

As an initial matter, we note that it appears from the record that Appellants failed to attach a complaint to their motion to intervene as dictated by Rule 24. See FED. R. CIV. PROC. 24(c) ("The motion shall . . . be accompanied by a pleading setting forth the claim or defense for which intervention is sought."). Although the filing of a complaint in intervention is clearly required by the language of the rule, this court has traditionally "been lenient in hearing the appeals of parties who have failed to fulfill the provisions of Rule 24(c)." See International Marine Towing, Inc. v. Southern Leasing Partners, Ltd., 722 F.2d 126, 129 (5th Cir. 1983). Furthermore, despite the SEC's having raised the issue in its opposition to Appellants' motion, the district court did not address this deficiency of Appellants' motion in his order dismissing the motion without prejudice. In addition, it appears from the

9

transcript of the July 22 hearing that the district court considered the merits of the motion, at least to a certain extent. As a result, we decline to decide the appeal on these grounds. See United States v. State of Louisiana, 543 F.2d 1125, 1128 n.4 (5th Cir. 1976). Our refusal to affirm the district court's decision on this basis, however, should not be interpreted as a license to ignore the requirements of Rule 24(c). If and when the Appellants again seek intervention as the district court has permitted them to do, strict compliance with the requirements of Rule 24(c) should be exacted.

Although Appellants' failure to attach a complaint results in some uncertainty as to what claims they propose to bring in the enforcement action, it is clear from the Appellants' brief, their original motion to intervene, and the amended complaint from the Florida action that the gravamen of any claims in intervention would be that they lost $5 million to the Florida defendants, including B. David Gilliland, the Hammersmith Trust entities, and Bridgeport Alliance, LLC, in connection with allegedly fraudulent investment schemes. It is unnecessary to determine the specific contours of Appellants' possible claims in intervention, however, as we conclude that Appellants fail to satisfy the second requirement of Rule 24(a)(2): a claim of an interest in the property or transaction that is the subject of the enforcement action.

10

The plain language of Rule 24(a)(2) states that the would-be intervenor must claim "an interest relating to the property or transaction which is the subject of the action . . . ." FED. R. CIV. PROC. 24(a)(2) (emphasis added).  As described in the SEC's second amended complaint, the property that is the subject of the enforcement action consists of $14 million in funds deriving from the allegedly fraudulent sales of unregistered "prime bank" securities by the enforcement action defendants.  Furthermore, these sales, coordinated in a Ponzi scheme, constitute the transaction that is the subject of the enforcement action.

Here, however, Appellants' interest pertains to the $5 million in funds that they themselves paid to the Florida defendants, not to the $14 million traceable to the fraudulent sales of the enforcement action defendants.  Appellants maintain, however, that they have an interest in the enforcement action because the equitable defendants in that action "may have received and may be in possession" of funds fraudulently obtained from Appellants.  Even if true, this fact is insufficient to create the requisite interest.  The SEC is not targeting any funds in the equitable defendants' possession for disgorgement other than the discrete group of assets directly traceable to fraudulent sales of unregistered securities by the enforcement defendants.  The mere fact that the funds to which Appellants assert their entitlement in the Florida action may be located in some of the same bank accounts as the funds sought by the SEC in

11

the enforcement action does not place the $5 million within the scope of the enforcement action.[8]  Therefore, we conclude that Appellants may not intervene as a matter of right on this basis.[9]

Nor does Appellants' contention that the Ponzi scheme in which they unwittingly participated was part, or an extension of, the Ponzi scheme allegedly perpetrated by the defendants in the enforcement action provide grounds for intervention under Rule 24(a)(2).  Even assuming, arguendo, that the Ponzi schemes were connected, the allegedly fraudulent sales of unregistered

---

[8]  We recognize that the appointment of a receiver over B. David Gilliland's, the Hammersmith Trust entities', and, assuming for the purposes of this discussion that Bridgeport Alliance, LLC is an alter ego or sister corporation of Bridgeport Alliance, Ltd., Bridgeport Alliance, LLC's assets -- as well as the freezing of those assets -- may impair Appellants' ability to recover funds from those entities once they have established their legal right to do so.  However, Appellants may not bootstrap an impairment caused by the enforcement action of an interest not at issue in the enforcement action into a right to intervene under Rule 24(a)(2).

[9]  We also note that Appellants have not established that their interest in the $5 million, much less in any part of the $14 million at issue in the enforcement action, is "direct, substantial, and legally protectable," as required under the law of this circuit.  See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 463-64 (5th Cir. 1984) (en banc) (collecting cases).  We assume that Appellants may remedy this defect by proceeding with the Florida action.  Once their right to the $5 million (or to some other number) is established, they may doubtless bring a claim to the receiver.  It appears from the district court's July 22 order that the receiver is considering a bankruptcy action as a way of dealing with the claims of defrauded investors, although the SEC asserts in its brief that a distribution plan – subject to court approval and available for comment and objection by the claimants – will be established by the receiver and/or the SEC.  In any event, it appears that an orderly procedure for distributing the funds recovered by the receiver will ensue after the enforcement action is resolved.

12

securities by B. David Gilliland, the Hammersmith Trust entities, or Bridgeport Alliance, LLC are not referenced in the SEC's second amended complaint, and nowhere else have we discerned an intent by the SEC to introduce evidence regarding alleged sales of unregistered securities by anyone other than the enforcement action defendants in the lawsuit. We are not inclined to stretch the meaning of "transactions which [sic] are the subject of the action" to include transactions that are not mentioned by the parties, much less litigated by them. Because our review of the briefs, the SEC's complaint in the enforcement action, and the Appellants' complaint in the Florida action does not reveal that Appellants have an interest in either the property or transaction that is the subject of the enforcement action, we conclude that the district court did not err in denying Appellants' motion to intervene under Rule 24(a)(2).

### C. Permissive Intervention

Appellants also argue that they are entitled to permissive intervention because they have established a common question of law or fact as required by Rule 24(b). See FED. R. CIV. PROC. 24(b)(2) (stating that anyone may be permitted to intervene "when an applicant's claim or defense and the main action have a question of law or fact in common"). However, this court has held that "[p]ermissive intervention is wholly discretionary with the [district] court . . . even though there is a common question

of law or fact, or the requirements of 24(b) are otherwise satisfied." New Orleans Pub. Serv., Inc., 732 F.2d at 470-71 (citing WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 1913) (internal quotation marks omitted).

> Accordingly, when we are asked to review a denial of permissive intervention, the question on appeal is not whether "the factors which render permissive intervention appropriate under Federal Rule of Civil Procedure 24(b) were present," but is rather "whether the trial court committed a clear abuse of discretion in denying the motion."

Id. at 471. The clear abuse of discretion standard is a high one; indeed, a reversal of a district court's denial of permissive intervention on appeal "is so unusual as to be almost unique." Id.

Here, our review of the record reveals no "extraordinary circumstances" that would justify a finding of clear abuse of discretion by the district court. See Cajun Elec. Power Coop., Inc. v. Gulf States Util., Inc., 940 F.2d 117, 121 (5th Cir. 1991). Rather, the district court's remarks at the July 22 hearing demonstrate that he considered the determination of claims by defrauded investors and the eventual distribution of funds to those claimants to be within the province of the receiver, and thus that it was more appropriate for Appellants to present their claims in the first instance to the receiver than to the court. The district court's decision reflected a pragmatic approach to case management and was manifestly within the scope of his discretion. As a result, we dismiss the appeal

14

with regard to the district court's denial of permissive intervention.[10]

## III. CONCLUSION

For the foregoing reasons, the district court's denial of Appellants' motion to intervene is AFFIRMED.

---

[10] Although we recognize that the district court made no findings in its order, "in the circumstances of this particular case, we feel that we can dispose of the question before us without a full record, since it is more than clear that appellants are not entitled to intervene." United States v. Perry County Bd. of Educ., 567 F.2d 277, 280 (5th Cir. 1978).