Dorothy A. EDWARDS; Afro–American Police Officers League; Houston Police Organization of Spanish Speaking Officers; Lionel Aaron; Bennie Conway; Clement B. Crosby, Jr.; Jose A. Garcia; Richard C. Garcia; Maria L. Guillory; Anthony R. Jammer; Charles A. McClelland; Silas Montgomery, Jr.; Clyde Phillpot; Carl Wayne Reed; Richard M. Spencer; Bruce D. Williams; Plaintiffs–Appellees,

Terry Hughes, individually and as a representative of the Houston Airport Police Officers Association and its Officers and Sergeants of the former Airport Police Force, Houston Police Patrolmen's Union, and the Individual Peace Officers Identified in Appendix A, an affiliate of the International Union of Police Associations AFL–CIO, Local 109; Haril Walpole; Frank L. Adamek; Joe M. Aldaco; William E. Baker; T. Barankowski; Jerry A. Briscoe; Ronnie P. Brooks; Gregory P. Countie; J. Devereux; Russell Feussel; Barbara Gastmyer; James Klein; Donald Klepac; Steven McCreary; Donnie Pardue; James Pritchard; L.N. Rackley; J.R. Roberts; Jackie Shallington; Dennis Spradlin; Stanley Stephens; B.G. Willoughby;

Thomas Zielinski; Jeffrey E. Bickel; Monty T. Bradney; Norman E. Graham; Jeffrey L. Hatfield; Roy P. Moody; Arthur Osborne; Cheri A. Page; Vincent C. Russo; W.J. Wissel, Jr.; Movants–Appellants,

Herman L. Mar; Lily M. Yep; Norman Wong; Sonny N. La; John Lei; John Chen; Phoung T. Nguyen; Michael H. Gee; Steven Lee; Mailow Seto; Jimmy S.C. Chau; Peter B. Dahlman; Movants,

Andrew L. Kelley; Anthony Comeaux; Robert L. Crane; James L. Dotson; Barbara J. Ellison; Steven Funderburk; Donald R. Hardy; John R. McDonald; Alvin V. Young, Sr., Consolidated Plaintiffs,

Willie Fields; Bennie L. Green; Richard Humphrey; McLoy Medlock; Consolidated Plaintiffs–Appellants,

v.

CITY OF HOUSTON, Defendant–Appellee.

Dorothy A. EDWARDS; Afro–American Police Officers League; Houston Police Organization of Spanish Speaking Officers; Lionel Aaron; Bennie Conway; Clement B. Crosby, Jr.; Jose A. Garcia; Richard C. Garcia; Maria L. Guillory; Anthony R. Jammer; Charles A. McClelland; Silas Montgomery, Jr.; Clyde Phillpot; Carl Wayne Reed; Richard M. Spencer; Bruce D. Williams; Plaintiffs–Appellees,

Houston Police Patrolmen's Union, and the Individual Peace Officers Identified in Appendix A, an affiliate of the International Union of Police Associations AFL–CIO, Local 109; Haril Walpole; Frank L. Adamek; Joe M. Aldaco; William E. Baker; T. Barankowski; Jerry A. Briscoe; Ronnie P. Brooks; Gregory P. Countie; J. Devereux; Russell Feussel; Barbara Gastmyer; James Klein; Donald Klepac; Steven McCreary; Donnie Pardue; James Pritchard; L.N. Rackley; J.R. Roberts; Jackie Shallington; Dennis Spradlin; Stanley Stephens;

B.G. Willoughby; Thomas Zielinski; Jeffrey E. Bickel; Monty T. Bradney; Norman E. Graham; Jeffrey L. Hatfield; Roy P. Moody; Arthur Osborne; Cheri A. Page; Vincent C. Russo; W.J. Wissel, Jr.; Movants–Appellants,

and

Andrew L. Kelley; Anthony Comeaux; Robert L. Crane; James L. Dotson; Barbara J. Ellison; Steven Funderburk; Donald R. Hardy; John R. McDonald; Alvin V. Young, Sr.; Consolidated Plaintiffs,

Willie Fields; Bennie Green; Richard Humphrey; McLoy Medlock; Consolidated Plaintiffs–Appellants,

Terry Hughes, individually and as a representative of the Houston Airport Police Officers Association and its officers and sergeants of the former Airport Police Force; Herman L. Mar; Lily M. Yep; Norman Wong; Sonny N. La; John Lei; John Chen; Phuong T. Nguyen; Michael H. Gee; Steven Lee; Mailow Seto; Jimmy S.C. Chau; Peter B. Dahlman; Movants,

v.

CITY OF HOUSTON, Defendant–Appellee,

Doug Elder; Mark W. Clark; Movants–Appellants.

Nos. 93–2315, 93–2476.

United States Court of Appeals, Fifth Circuit.

April 1, 1996.

Sharon Rachel Vinick, Washington, D.C., Richard T. Seymour, Lawyers' Committee for Civil Rights Under Law, Washington, DC, for plaintiffs-appellees.

Joan M. Lucci Bain, Bain & Bain, Houston, TX, Stuart M. Nelkin, Nelkin & Nelkin, Houston, TX, for movants-appellants.

Michael M. Essmyer, Essmyer & Associates, Houston, TX, for Terry Hughes.

Pauline Ng Lee, Houston, TX, for movants.

Mark T. McDonald, Houston, TX, for Andrew L. Kelley.

Robert L. Penrice, Texas City, TX, for consolidated plaintiffs.

Willie Fields, Houston, TX, pro se.

Bennie L. Green, Houston, TX, pro se.

Richard Humphrey, Houston, TX, pro se.

Jaqueline Elaine Medlock, Houston, TX, for McLoy Medlock, Willie Fields, Bennie Green, and Richard Humphrey.

Mark Ruth Thompson, Houston, TX, John E. Fisher, Senior Assistant City Attorney, Office of the City Attorney for the City of Houston, Houston, TX, for City of Houston.

Oscar Freer Jones, III, Victoria, TX, for amicus curiae.

Before POLITZ, Chief Judge and REYNALDO G. GARZA,[1] KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER and DENNIS, Circuit Judges.[2]

DUHÉ, Circuit Judge:

African–American and Hispanic–American members of the Houston Police Department brought an employment discrimination suit against the City of Houston ("City"). Groups representing white, female, and Asian–American police officers, as well as members of the Houston airport and parks police agencies, moved to intervene in the lawsuit to contest the Consent Decree that the parties had negotiated in settlement of this litigation. The would-be intervenors complained that their interests were not adequately represented by the parties in the negotiation and drafting of this Consent Decree, and as a result it impairs their interests.

The district court denied the motions to intervene in the underlying case and to intervene "for purposes of appeal only" and upheld the Consent Decree. On appeal, a panel of this court affirmed the district court's denial of the motions to intervene in the underlying case and approval of the Consent Decree, but reversed the district court's denial of the motions to intervene for purposes of appeal.[3] Subsequently, this court agreed to rehear the case en banc, and has concluded that the district court erred in denying the motions to intervene in the underlying case. Accordingly, we reverse the district court's denial of the Houston Police Patrolmen's Union's and the Houston Airport Police Officers' Association's motions to intervene in the underlying case,[4] vacate the district court's order approving the Consent Decree, and remand the cause to the district court. On remand, the district court shall allow these would-be intervenors to intervene with the rights of full parties; grant these new parties sufficient time for discovery to prepare to oppose the Consent Decree; and hold another "fairness hearing" after such time for discovery at which the interests of all affected parties can be adequately represented.

I. Background[5]

The original Complaint was filed on August 19, 1992, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq., as amended by the Civil Rights Act of 1991 and the Equal Employment Opportunity Act of 1972. The plaintiffs filed timely charges of racial discrimination with the EEOC between August 29, 1991 and March 26, 1992, alleging that the City's promotional examinations for the ranks of Sergeant and Lieutenant in the Houston Police Department ("HPD") discriminated against African–

---

1. Senior Judge Reynaldo G. Garza is participating as a member of the panel initially deciding the appeal now subject to en banc review. 28 U.S.C. § 46(c).

2. Judge Smith is recused.

3. *Edwards v. City of Houston,* 37 F.3d 1097 (5th Cir.1994).

4. The motions filed by these organizations were filed not only on their own behalf, but also on behalf of several named individuals and as representatives of specified classes of individuals. Thus, the relief we afford these organizations applies equally to the individuals and classes named in their respective motions.

5. Although we vacate our prior panel opinion, we retain, with some adjustments, its excellent recitation of the complex, and vitally important, chronological background of this case.

Americans and Hispanic–Americans.[6] Efforts to obtain redress for HPD's allegedly discriminatory promotional tests began, however, in 1975 and 1976, when *Kelley v. Hofheinz*, C.A. No. H–75–1536, and *Comeaux v. City of Houston*, C.A. No. 76–H–1754,[7] were filed.

Among other issues, the *Kelley* and *Comeaux* cases raised the claim that the HPD's promotional examinations discriminated against African–American police officers based on their race in violation of Title VII. These challenges were based upon 1975 and 1976 EEOC charges of racial discrimination in the promotional tests. In 1979, the *Comeaux* action was consolidated into *Kelley*. In March 1982, plaintiffs from the original *Kelley* action filed discovery requests. In 1983, there were unsuccessful settlement discussions between the consolidated *Kelley* plaintiffs and the City. No further actions were taken to advance the litigation until 1992.

On April 16, 1992, the City refused to consent to the intervention in *Kelley* of the Afro–American Police Officers League, the Houston Police Organization of Spanish Speaking Officers, and a group of African–American and Hispanic–American police officers. On April 17, 1992, these groups moved to intervene in *Kelley*, alleging that they had been harmed by racially discriminatory promotional examinations for the ranks of Sergeant and Lieutenant in the HPD, that the disposition of *Kelley* could impair their interests, and that in light of the passage of time, their interests were not being represented effectively in *Kelley*. On the same day, the City moved to dismiss *Kelley* for want of prosecution.

On June 18, 1992, the district court dismissed all claims in *Kelley* for want of prosecution except for test-promotion related claims accruing after January 1, 1982. The district court also denied the application for leave to intervene, ordered the applicants for intervention to file a new lawsuit to be transferred to the same judge, directed that the remainder of *Kelley* be consolidated into the new lawsuit, and ordered that the new plaintiff class consist of African–Americans and Hispanic–Americans. As ordered by the district court, the Afro–American Police Officers League, the Houston Police Organization of Spanish Speaking Officers, and a group of African–American and Hispanic–American police officers (collectively "Plaintiffs") timely filed a new suit on August 19, 1992, after receipt of Notices of Right to Sue issued by the United States Attorney General, and the remnants of the *Kelley* case were consolidated into this new action.

Plaintiffs in this new action, which is the subject of this appeal, alleged that the challenged examinations had the effect of disproportionately excluding African–Americans and Hispanic–Americans from promotion to Sergeant from 1982 to date, and of disproportionately excluding African–Americans from promotion to Lieutenant from 1982 to date. They further alleged that the examinations were not job-related or consistent with business necessity. The plaintiffs sued on their own behalf, on behalf of the African–American and Hispanic–American members of the HPD who took a Sergeant examination from 1982 to date or who will compete for promotions to Sergeant in the future, and on behalf of African–American members of the HPD who took a Lieutenant examination from 1982 to date or who will compete for promotions to Lieutenant in the future.

Settlement negotiations began in earnest in the fall of 1992 and resulted in a proposed Consent Decree which was submitted to the district court on January 21, 1993. On February 3, 1993, the district court ordered that notice be given to all current and former

---

6. The entry-level uniformed position within the Houston Police Department is Police Officer. The first promotional position is currently the rank of Sergeant. Police Officers with two years of service as Police Officers are allowed to compete for the rank of Sergeant. The second promotional position is the rank of Lieutenant. Sergeants with two years of service as Sergeants may compete for the rank of Lieutenant.

7. The named plaintiffs in *Comeaux* included McLoy Medlock, Richard Humphrey, Willie Fields, and Bennie L. Green. These men are appellants in this matter and will be referred to hereafter as "the original *Comeaux* plaintiffs."

Class A peace officers of the City of Houston whose rights and interests were affected by the Consent Decree tentatively approved by it on that date. The notice stated that a free copy of the Consent Decree could be acquired from the HPD Legal Services Division. The notice also stated that March 12, 1993 was the deadline for filing objections and that a fairness hearing was scheduled for March 24, 1993.[8]

Before the fairness hearing was conducted, representatives of the following groups moved to intervene: Houston Police Patrolmen's Union[9] ("HPPU"); Female Police Officers; Asian Police Officers; and Houston Parks Police Officers. The district court signed an order on March 17, 1993, informing the parties that a hearing on the motions for intervention was scheduled for March 22, 1993. At that hearing, the Houston Airport Police Officers Association[10] ("HAPOA") orally moved to intervene. With the district court's permission, it later filed a written motion on March 23, 1993. At the conclusion of the hearing, the district court denied all of the motions for intervention.

On March 24, 1993, just two days after the motion hearing, the district court held the fairness hearing. At this hearing, the applicants for intervention were allowed to: (1) cross-examine witnesses, the only ones being Plaintiffs' statistical experts and the Chief of Police; (2) proffer evidence; and (3) raise objections to the Consent Decree. The district court again denied the motions for intervention, but allowed the applicants for intervention to file motions to intervene for purposes of appeal, if filed by April 19, 1993.

On March 25, 1993, the district court entered lengthy Findings of Fact and Conclusions of Law, in which it certified the following class:

a. All African–Americans who are employed, or at any time since January 1, 1982 were employed, as Class A peace officers by the Houston Police Department and who took a promotional examination for the rank of Lieutenant or for the rank of Sergeant which was administered at any time from January 1, 1982 to the present, and those who will compete for such promotions in the future; and

b. All Hispanic–Americans who are employed, or at any time since January 1, 1982 were employed, as Class A peace officers by the Houston Police Department and who took a promotional examination for the rank of Sergeant which was administered at any time from January 1, 1982 to the present, and those who will compete for such promotions in the future.

Additionally, the district court made one modification to the Consent Decree and made the Consent Decree a final judgment.[11]

Under the Consent Decree, African–Americans and Hispanic–Americans who took an examination for Sergeant from January 1, 1982 to date, and who passed at least one examination for this rank, will receive a total of 96 remedial promotions; African–Americans and Hispanic–Americans who took an examination for Sergeant from January 1, 1982 to date, and who were promoted after a discriminatorily long waiting period which delayed their ability to compete for Lieutenant promotions will receive five remedial pro-

**8.** The course taken by the district court was an effort to comply with 42 U.S.C. § 2000e–2(n). Section 2000e–2(n) protects consent judgments from certain subsequent collateral challenges by persons who, although not parties to the litigation that produced it, may have interests adversely affected by the judgment.

**9.** The HPPU appellants are comprised of 109 individual Class A peace officers who held the position of Police Officer on February 3, 1993, and 22 individual Class A peace officers who held the position of Sergeant on that date. The HPPU appellants sought to intervene as class representatives of all similarly situated Class A

peace officers holding the rank of Police Officer, Sergeant, or Lieutenant.

**10.** The motion was made on behalf of Terry Hughes, individually and as a representative of the HAPOA and of present and former officers and sergeants of the Airport Police Force.

**11.** The district court added the following sentence after the first sentence of paragraph 34. A person who receives a remedial promotion will receive compensatory retroactive seniority only back to the date six months after the earliest test that person took for the position, even if the promotion arises from a disparity in an earlier test.

motions to Lieutenant; and African–Americans who took an examination for Lieutenant from January 1, 1982 to date, and who passed at least one examination for this rank, will receive a total of five remedial promotions. The named plaintiffs in this lawsuit who meet the necessary conditions shall have priority. The remedial promotions will be made over a five-year period. The Consent Decree does not provide for back pay. The Consent Decree also seeks, during the next ten years, to reduce the adverse impact against African–Americans and Hispanic–Americans taking exams for Sergeant and Lieutenant by striking "racially biased items" from the exams and by extending the life of promotional registers during this period from one year to two years. In employing these latter remedial practices, the Consent Decree supersedes some provisions of the Fire and Police Civil Service Act and the Texas Local Government Code chapter 143, as amended.

On May 20, 1993, the district court denied motions to intervene for purposes of appeal filed by the following groups:[12] HPPU; HAPOA; Female Police Officers; Houston Police Officers Association[13] ("HPOA"); and the original *Comeaux* plaintiffs.

The HPPU and the HAPOA appeal the district court's denial of their motions to intervene in the underlying case. The HPPU, the HPOA, and the original *Comeaux* plaintiffs appeal the district court's denial of their motions to intervene for purposes of appeal.[14] The HPPU and the original *Comeaux* plaintiffs also appeal the district court's approval of the Consent Decree. Finally, the HAPOA appeals the district court's

approval of paragraph 61 of the Consent Decree, entitled "Reclassification of Peace Officers."[15]

## II. Appellate Jurisdiction

Essentially, the several appellants contest two facets of the district court proceedings: (1) the orders of March 25, 1993, and May 20, 1993, denying various motions to intervene, and (2) the final judgment of March 25, 1993, adopting the Consent Decree as the judgment of the court.

### A. *The orders denying intervention*

The denial of a motion to intervene of right is an appealable final order under 28 U.S.C. § 1291. *Ceres Gulf v. Cooper,* 957 F.2d 1199, 1202 n. 5 (5th Cir.1992) (and cases cited therein); *Piambino v. Bailey,* 610 F.2d 1306, 1320 (5th Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980). When determining the appealability of orders denying permissive intervention, however, this Circuit operates under an "anomalous rule," in that we have only provisional jurisdiction to determine whether the district court erroneously denied such motions. If the district court's denial of permissive intervention does not constitute an abuse of discretion, we must dismiss the appeal for lack of jurisdiction. *Stack v. Gamill,* 796 F.2d 65, 67 (5th Cir.1986); *Woolen v. Surtran Taxicabs, Inc.,* 684 F.2d 324, 330–31 (5th Cir. 1982). On the other hand, if the district court abused its discretion in denying the Rule 24(b) motion, we retain jurisdiction and must reverse.[16] *Woolen,* 684 F.2d at 330–31.

12. All of these motions were filed on or before the April 19, 1993 deadline set by the district court.

13. Doug Elder and Mark Clark, individually and as representatives of the Houston Police Officers Association, and all Class A peace officers, holding the rank of Police Officer and Sergeant of Police.

14. A thorough review of the record on appeal fails to reveal any attempt by the Female or Asian–American police officers to appeal the denial of their motions to intervene or by the Female police officers to appeal the denial of their motion to intervene for purposes of appeal.

15. The Houston Parks Police Officers filed an amicus brief in support of the Airport Police Officers' position.

16. There is inconsistency in our case law as to whether this anomalous rule of provisional jurisdiction applies equally to our review of a denial of intervention of right. *Hopwood v. Texas,* 21 F.3d 603 (5th Cir.1994) (affirming denial of intervention of right); *United States v. Texas E. Transmission Corp.,* 923 F.2d 410 (5th Cir.1991) (same); *League of United Latin Am. Citizens v. Clements,* 884 F.2d 185 (5th Cir.1989) (same); *Kneeland v. NCAA,* 806 F.2d 1285 (5th Cir.) (same), *cert. denied,* 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 (1987) (same); *Jones v. Caddo Parish Sch. Bd.,* 735 F.2d 923 (5th Cir.1984) (en

*B. The order approving the Consent Decree*

■ As to the appeal of the district court's final judgment of March 25, 1993, approving the Consent Decree, 28 U.S.C. § 1291 specifically grants us jurisdiction "of appeals from all final decisions of the district courts of the United States." Notwithstanding § 1291's authorization, the inquiry is not complete. It is well-settled that one who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit. *Marino v. Ortiz*, 484 U.S. 301, 304, 108 S.Ct. 586, 587–88, 98 L.Ed.2d 629 (1988); *Karcher v. May*, 484 U.S. 72, 77, 108 S.Ct. 388, 391–93, 98 L.Ed.2d 327 (1987) (and cases cited therein, especially *United States ex rel. Louisiana v. Jack*, 244 U.S. 397, 37 S.Ct. 605, 61 L.Ed. 1222 (1917)).[17]

■ Neither Plaintiffs nor the City have appealed the district court's March 25, 1993 final judgment. Instead, the only contestants of this order are would-be intervenors whose attempts to join the case pre-judgment (i.e., the HPPU and the HAPOA) and post-judgment for purposes of appeal (i.e., the HPPU and the original *Comeaux* plaintiffs) were unsuccessful. Consequently, because the HPPU and the HAPOA were denied leave to intervene, and thus never obtained the status of party litigants in this suit, we dismiss their appeals, insofar as they seek review of the district court's final judgment of March 25, 1993 approving the Consent Decree. The status of the original *Comeaux* plaintiffs requires a more involved inquiry.

*C. The original Comeaux plaintiffs*

The status and actions of the original *Comeaux* plaintiffs in this case are quite bewildering. In the first amended complaint filed in the *Comeaux* case on December 29, 1978, the claims of the four men now before us were styled, in part, as:

Plaintiff Fields would show that although he passed the Detective's examination, he was denied a promotion because of the HPD's discriminatory promotional practices. In addition, Plaintiff Fields was denied a transfer to another department for which he was fully qualified and was denied because of his race.

\* \* \*

Plaintiff Green would show that he was not treated equally with White officers in the Department with regard to terms and conditions of employment solely on the basis of his race and has suffered because of Defendants' subjective efficiency rating system which affects Blacks disparately and limits their mobility within the Department.

\* \* \*

Plaintiff Humphrey would show that although he took the Lieutenant's exam and scored well, he was denied a promotion to Lieutenant because of the HPD's subjective testing and qualifying practices and procedures.

\* \* \*

Plaintiff Medlock would show that even though he took the Lieutenant's examination and scored well, he was denied a

---

banc) (same); *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir.) (en banc) (same), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984); *United States v. Louisiana*, 669 F.2d 314 (1982) (same); *United States v. Allegheny–Ludlum Indus., Inc.*, 553 F.2d 451 (5th Cir.1977) (same), *cert. denied*, 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978). *See also Bush v. Viterna*, 740 F.2d 350, 351 n. 1 (5th Cir.1984) (affirming denial of intervention of right and recognizing distinction between appeal of denial under Rule 24(a) and 24(b)). *But see United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755 (5th Cir.1995) (finding denial of intervention of right proper and, thus, dismissing the appeal for want of jurisdiction); *Lelsz v. Kavanagh*, 710 F.2d 1040, 1048 (5th Cir.1983) (same); *United*

*States v. United States Steel Corp.*, 548 F.2d 1232, 1233, 1236 (5th Cir.1977) (same); *United States v. Allegheny–Ludlum Indus., Inc.*, 517 F.2d 826, 846 (5th Cir.1975) (same), *cert. denied*, 425 U.S. 944, 944, 96 S.Ct. 1684, 1684, 48 L.Ed.2d 187, 187 (1976). Because we conclude that the district court erroneously denied intervention of right in the underlying case, and because this conclusion allows us to retain jurisdiction of the appeal and reverse the denial under any theory, we need not resolve this inconsistency today.

**17.** Additionally, Federal Rule of Appellate Procedure 3(c) requires that "[a] notice of appeal ... specify the *party or parties* taking the appeal." (Emphasis added.).

promotion to Lieutenant because of HPD's discriminatory promotional practices and procedures utilizing subjective tests and efficiency ratings.

9 R. at 105–06. These claims were in addition to complaints of other allegedly racially discriminatory practices of the HPD at that time. *Id.* at 106–07.

The district court's June 18, 1992 order dismissed all of the claims of the consolidated plaintiffs from the original *Comeaux* and *Kelley* cases, except for test-promotion related claims accruing after January 1, 1982. 7 R. at 268. Further, it directed that the current case be filed "in the style of *Edwards v. Houston*," and that the remaining claims from *Comeaux* and *Kelley* be consolidated into the *Edwards* action. *Id.*

In *Edwards*, the decision now under review, the district court certified a plaintiff class that included African–Americans employed by the HPD on or after January 1, 1982, who took a promotional exam for the rank of Sergeant or Lieutenant administered on or after that same date. 2 R. at 1188. Additionally, the district court entered Findings of Fact and Conclusions of Law, concluding that:

a. Willie E. Fields failed the Sergeant tests given in 1975 and 1977, passed the 1979 Sergeant test with a rank of 97, and failed the Sergeant tests given in 1983 and 1985.

b. Bennie Lee Green passed the 1979 Sergeant test with a rank of 86, and failed the 1980, 1981, and 1983 Sergeant tests.

c. Richard C. Humphrey passed the 1976 and 1977 Lieutenant tests with ranks of 69 and 66, respectively. It is unclear whether he passed the 1978 Lieutenant test. He failed the 1979 and 1980 Lieutenant tests.

d. McCloy [sic] Medlock passed the 1975 Lieutenant test with a rank of 45, passed the 1976 Lieutenant test with a rank of 43 ..., and passed the 1979 Lieutenant test with a rank of 26.

2 R. at 1122.

■ From the foregoing, we can draw the following conclusions about the status of the original *Comeaux* plaintiffs in this litigation. Willie Fields and Bennie Green are plaintiffs in the current action, insofar as the June 18, 1992 order did not dismiss their claims arising from the exams they took after 1981. To the contrary, these claims represent the "remainder" of *Kelley* ordered to be consolidated into the current litigation. Therefore, neither Fields nor Green needs to intervene in this case to protect their post–1981 test-promotion related claims, and each may appeal the approval of the Consent Decree. Richard Humphrey and McLoy Medlock, on the other hand, only took exams administered prior to 1982, and thus all of their claims were dismissed by the June 18, 1992 order. Because all of Humphrey's and Medlock's claims have been dismissed, they are not plaintiffs in this lawsuit and must intervene to obtain party status. Having been denied intervention, neither Humphrey nor Medlock is a party to this suit, and thus neither can appeal the judgment approving the Consent Decree. *Marino,* 484 U.S. at 304, 108 S.Ct. at 587–88.

■ Finally, we address the fate of the original *Comeaux* plaintiffs' non-test-promotion related and pre–1982 test-promotion related claims. The district court dismissed all such claims on June 18, 1992, for want of prosecution. We treat a dismissal for want of prosecution as an involuntary dismissal under Federal Rule of Civil Procedure 41(b). *Berry v. CIGNA/RSI–CIGNA,* 975 F.2d 1188, 1190 (5th Cir.1992). Pursuant to Rule 41(b), a dismissal for failure to prosecute, unless otherwise stated in the order of dismissal, is a complete adjudication on the merits, and thus with prejudice. *Callip v. Harris County Child Welfare Dep't,* 757 F.2d 1513, 1519 (5th Cir.1985) (citing *Weissinger v. United States,* 423 F.2d 795, 798–99 (5th Cir.1970) (en banc)). As such, a party wishing to appeal from such an order of dismissal must do so within thirty days, pursuant to Federal Rule of Appellate Procedure 4(a). *See Aucoin v. K–Mart Apparel Fashion Corp.,* 943 F.2d 6, 8 (5th Cir.1991); *Eleby v. American Medical Sys., Inc.,* 795 F.2d 411, 412 (5th Cir.1986). None of the original *Comeaux* plaintiffs filed a notice of appeal of the June 18, 1992 order, thus we have no jurisdiction to review this order of dismissal.

The original *Comeaux* plaintiffs did, however, file with the district court an Objection to Order of Dismissal on March 12, 1993. The Federal Rules of Civil Procedure do not recognize such a pleading *in haec verba*. Nonetheless, we have oft stated that "[t]he relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label." *Bros Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir.1963). *See also Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990), *cert. denied,* —— U.S. ——, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). Accordingly, we may treat this pleading as either a Rule 59(e) motion to alter or amend the judgment or a Rule 60(b) motion for relief from the judgment. *Lavespere*, 910 F.2d at 173. Because a Rule 59(e) motion must be filed within 10 days of entry of the judgment, and this motion was filed almost 9 months after entry of the order of dismissal, we will consider the motion a Rule 60(b) motion. *Id.; Williams v. Brown & Root, Inc.*, 828 F.2d 325, 328 (5th Cir.1987).

In its Findings of Fact and Conclusions of Law entered on March 25, 1993, the district court denied the motion. Denial of a Rule 60(b) motion is an appealable order, *Eleby*, 795 F.2d at 412, and the original *Comeaux* plaintiffs timely filed their notice of appeal on April 23, 1993. At this point, we clarify that all that is before us as to the original *Comeaux* plaintiffs is the denial of the Rule 60(b) motion, not the propriety of the underlying order of dismissal. As such, we recognize that the decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court and will be reversed only for abuse of that discretion. *Lancaster v. Presley*, 35 F.3d 229, 231 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1380, 131 L.Ed.2d 233 (1995); *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1200 (5th Cir.1993); *Eleby*, 795 F.2d at 413. Because movants' original action sat dormant for almost a decade prior to dismissal, and movants did not offer any explanation for this inactivity to the district court, the district court did not abuse its discretion in denying the motion. Consequently, the original *Comeaux* plaintiffs have lost the right to pursue their non-test-promotion related and pre–1982 test-promotion related claims in this action.

## III. Standard of Review

Having narrowed the scope of this appeal, we recognize that the primary question presented is whether the district court erred in denying the various motions to intervene and motions to intervene for purposes of appeal. The would-be intervenors sought intervention of right and, alternatively, permissive intervention.

A ruling denying intervention of right is reviewed *de novo*. *Ceres Gulf*, 957 F.2d at 1202. Denial of permissive intervention, on the other hand, is reviewed for clear abuse of discretion. *Cajun Elec. Power Coop. v. Gulf States Utils., Inc.*, 940 F.2d 117, 121 (5th Cir.1991); *United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 416 (5th Cir.1991). "Under this standard, the Court will reverse a district court decision only under 'extraordinary circumstances.'" *Cajun Elec. Power Coop.*, 940 F.2d at 121.

## IV. Intervention

Appellees, Plaintiffs and the City, make essentially two arguments in support of the district court's denial of the numerous motions for intervention. First, Appellees contend the motions were untimely. Second, Appellees argue that the would-be intervenors were given sufficient opportunity to voice their concerns at the fairness hearing pursuant to 42 U.S.C. § 2000e–2(n), and therefore intervention was not necessary and was properly denied. We address the second contention first.

### A. What effect has 42 U.S.C. § 2000e–2(n) on a nonparty's ability to intervene?

Appellees argue that the various motions to intervene were properly denied because "[t]he appellants have already received the substance of the benefits of intervention as parties, have had their points considered by the district court, and are obtaining review by this Court of the district court's grant of

final approval." Brief for Plaintiffs–Appellees and Defendant–Appellee at p. 39. The argument continues that "[§ 2000e–2(n)] provide[s] a procedure by which third parties unrepresented in a lawsuit may be bound by the results of that lawsuit if they are provided with a full and fair opportunity to present their objections and have them heard, without necessarily being allowed to intervene in the enforcement action.... [Accordingly], the appellants received all the process that was due." *Id.* at 41. Hence, the thrust of Appellees' argument is that "[§ 2000e–2(n)] sets up an *alternate procedure* which complies with the requirements of due process," and that implementation of its provisions is an adequate substitute for intervention. Supplemental Brief for Appellees at p. 33 (emphasis added).

■■■ The issue confronting us, then, is whether a nonparty seeking to intervene into litigation in order to challenge a consent decree arising therefrom may be denied intervention solely because the parties to the litigation have provided him with the notice and opportunity prescribed by § 2000e–2(n)(1)(B)(i). This question is one of first impression in this Circuit. As such, § 2000e–2(n)'s effect on a nonparty's ability to intervene must be ascertained from review of its text and limited legislative history.

Section 2000e–2(n) provides in relevant part:

(1)(A) Notwithstanding any other provision of law, and except as provided in paragraph (2), an employment practice that implements and is within the scope of a litigated or consent judgment or order that resolves a claim of employment discrimination under the Constitution or Federal civil rights laws may not be challenged under the circumstances described in subparagraph (B).

(B) A practice described in subparagraph (A) may not be challenged in a claim under the Constitution or Federal civil rights laws—

(i) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had—

(I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

(II) a reasonable opportunity to present objections to such judgment or order; or

(ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

42 U.S.C. § 2000e–2(n)(1). This provision was added to Title VII by the Civil Rights Act of 1991 as Congress' response to *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989).

The factual background of *Wilks* is not unlike most employment discrimination class action lawsuits. In 1974, the NAACP and seven African–American individuals filed separate class action complaints against the city of Birmingham, Alabama, and the Jefferson County Personnel Board ("Board") alleging that both had engaged in racially discriminatory hiring and promotion practices in various public service jobs. After a bench trial, but before judgment, the parties entered into two consent decrees which set forth an extensive remedial scheme, including goals for the hiring and promotion of African–Americans in the fire department. The district court entered an order provisionally approving the decrees and directing publication of notice of an upcoming fairness hearing. At the hearing, the Birmingham Firefighters Association ("BFA") appeared and filed objections to the decrees. After the hearing, but before final approval of the decrees, the BFA and two of its members sought to intervene on the ground that the decrees would adversely affect their rights. The motions were denied as untimely and the decrees were approved. Subsequently, seven white firefighters, all members of the BFA, filed a

complaint seeking injunctive relief against enforcement of the decrees, arguing the decrees would operate to illegally discriminate against them. Again, the district court denied relief.

Both the denial of intervention and the denial of injunctive relief were affirmed on appeal. Thereafter, a new group of white firefighters sued the city of Birmingham and the Board alleging that they were being denied promotions because of their race, and that this practice constituted impermissible racial discrimination in violation of the Constitution and federal law. The city of Birmingham and the Board argued that, although their promotion decisions were race-based, those decisions could not be assailed because they were made pursuant to the court-approved consent decrees. In affirming the Eleventh Circuit and allowing the white firefighters to pursue their separate lawsuit challenging the decrees, the Supreme Court rejected the impermissible collateral attack doctrine and concluded that, because the white firefighters were not parties to the consent decrees, their independent claims of unlawful discrimination were not precluded. In so holding, the Court rejected the argument that the white firefighters had a duty to attempt to intervene in the lawsuit; instead, it placed the burden on the parties to join all persons who might be affected by a decree under Federal Rule of Civil Procedure 19's mandatory joinder provisions.

While Congress agreed the impermissible collateral attack doctrine was overly restrictive in that it precluded all challenges to a Title VII consent decree once entered by a court, it found the *Wilks* rule to be overly expansive and equally unacceptable. H.R.Rep. 40(I), 102d Cong., 1st Sess. 49–50 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 587–88 (*hereinafter* H.R.Rep. part I). Ac-

cordingly, Congress set out to create a "special remedial scheme" that would balance the rights of nonparties against the need for finality of judgments and prompt relief for discrimination.[18] *Id.* at 50, *reprinted in* 1991 U.S.C.C.A.N. at 588. The passage of the Civil Rights Act of 1991 struck this legislative balance by incorporating § 2000e–2(n) into Title VII.

In enacting § 2000e–2(n), Congress recognized that "[o]nce an employment dispute has reached the courts, the parties, all nonlitigants with a stake in the outcome, and the public have a strong interest in bringing the litigation to an expeditious end. [Accordingly], all related interests and claims should be adjudicated *in one proceeding*." H.R.Rep. part 1 at 53, *reprinted in* 1991 U.S.C.C.A.N. at 591 (emphasis added). Section 2000e–2(n) serves this interest by precluding challenges to a court-approved consent decree via a new lawsuit independent of the proceeding giving rise to the decree. Specifically, the statute limits its application to challenges of "employment practice[s] that implement[ ] . . . a . . . consent judgment or order that resolves a claim of employment discrimination." 42 U.S.C. § 2000e–2(n)(1)(A).

Recognizing that intervention also facilitates the resolution of all related claims in a single proceeding, § 2000e–2(n) expressly provides: "Nothing in this subsection [§ 2000e–2(n) ] shall be construed to . . . alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened." 42 U.S.C. § 2000e–2(n)(2)(A). Congress explained:

> [T]hese rules do not alter the standards for determining whether a person may inter-

---

**18.** In *Wilks,* the Supreme Court pronounced the general rule that "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." 490 U.S. 755, 762, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989) (footnote omitted). As is true with most rules, this one is subject to certain exceptions:

> We have recognized an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his

interests adequately represented by someone with the same interests who is a party. Additionally, where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy and probate, legal proceedings may terminate preexisting rights if the scheme is otherwise consistent with due process.

*Id.* at 762 n. 2, 109 S.Ct. at 2184 n. 2 (citations omitted). Within this language lies the impetus for § 2000e–2(n).

vene in an action under Rule 24 of the Federal Rules of Civil Procedure. A person wishing to challenge an employment practice that implements a court decree will thus retain the right under rule 24 to seek to intervene in the proceeding in which the decree was entered, and the court will determine whether intervention is appropriate through reference to the principles that have developed under Rule 24. Similarly, the preclusion rules do not apply to the rights of parties who successfully intervene pursuant to Rule 24.

H.R.Rep. part I at 59, *reprinted in* 1991 U.S.C.C.A.N. at 597.

■ Thus, nonparties seeking to intervene in the proceeding that gives rise to the challenged consent decree are not precluded from doing so because they were afforded notice of their right to object to the decree and the opportunity to do so at a fairness hearing prior to the district court's acceptance of the decree as set forth in § 2000e-2(n)(1)(B)(i). *Wilks* allowed nonparties to file a new, independent lawsuit challenging the implementation of a court-approved consent decree, and Congress responded to preclude such successive litigation. In neither instance did Congress or the Supreme Court suggest that nonparties were estopped from intervening in the same proceeding that produced the consent decree.[19] Instead, the

merits of a nonparty's motion to intervene will be adjudicated in accordance with the standards established under Rule 24 for such motions in civil litigation in general.

Because the would-be intervenors in this case sought to join the litigation that produced the challenged consent decree, as opposed to challenging the decree in a separate reverse discrimination suit filed after remedial promotions had been made pursuant to it, the fact that the parties complied with § 2000e-2(n)(1)(B)(i) is extraneous to the issue of intervention. The question of intervention is to be judged pursuant to the principles established under Rule 24. Consequently, our inquiry simply concerns whether the various motions in this proceeding complied with the requirements of that rule.

## B. Should intervention in the underlying litigation have been allowed?

The HPPU and the HAPOA are the only two opponents of the district court's failure to grant leave to intervene in the underlying litigation.[20] Accordingly, our discussion of the merits of these motions to intervene will focus on the postures of these applicants only.

---

**19.** Section 2000e-2(n) facilitates the participation of persons such as the objectors here in Title VII litigation or consent decree proceedings because parties who resolve litigation through settlement may not ordinarily dispose of the claims of a third person without that person's agreement. "A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of non-consenting intervenors...." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986). In *Wilks,* too, the Court emphasized that

A voluntary settlement in the form of a consent decree between one group of employees and their employer cannot possibly "settle," voluntarily or otherwise, the conflicting claims of another group of employees who do not join in the agreement. This is true even if the second group of employees is a party to the litigation [quoting *Fire Fighters, supra* ].

490 U.S. at 768, 109 S.Ct. at 2188.

When Congress changed the *Wilks* rule of mandatory joinder to a rule of mandatory notice, it did not alter this basic principle. Thus, if per-

sons are improperly prevented from intervening as parties to the consent decree litigation, they should not be bound by its results. *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 117–18, 85 L.Ed. 22 (1940).

**20.** At oral argument, the HPOA's standing to appeal the district court's denial of intervention in the underlying case was put at issue because the only motion filed by the HPOA (see *supra* note 13 for who comprises "the HPOA") was to intervene for purposes of appeal. Doug Elder and Mark Clark, the named intervenors on HPOA's motion, however, seek to represent the HPOA's membership of Class A Police Officers and Sergeants. To the extent this membership falls within the class of all Class A peace officers holding the rank of Police Officer, Sergeant, or Lieutenant, sought to be represented by the HPPU, we conclude that the HPPU's motion is sufficient to protect the rights of the member officers of the HPOA to intervene in the underlying case. Accordingly, our disposition of the HPPU's motion applies equally to the members of the HPOA who are within the class sought to be represented by the HPPU.

Intervention is governed by Federal Rule of Civil Procedure 24.[21] A nonparty seeking to intervene, and thereby obtain the rights and privileges of a party to the lawsuit, has available two avenues under the Rule. Section (a) provides for mandatory intervention. Alternatively, section (b) affords a nonparty without an interest in the litigation sufficient to mandate intervention to join the proceedings through the exercise of the trial court's discretion. The would-be intervenors pleaded sections (a) and (b) in the alternative, and because the bases for allowing intervention under each section are different, we discuss them separately.

### 1. *Rule 24(a) Intervention of Right*

 As none of the would-be intervenors contend that any statute of the United States provides them an unconditional right to intervene, our focus is on subsection (a)(2) of Rule 24. To intervene of right under subsection (a)(2), an applicant must meet the following requirements:

(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the appli-

cant's interest must be inadequately represented by the existing parties to the suit. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir.) (en banc) (quoting *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir.1978)), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). Failure to satisfy any one requirement precludes intervention of right. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994); *Kneeland v. NCAA*, 806 F.2d 1285, 1287 (5th Cir.), *cert. denied*, 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 (1987). Nonetheless, "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application.... [and] intervention of right must be measured by a practical rather than technical yardstick." *Texas E. Transmission Corp.*, 923 F.2d at 413 (quoting *United States v. Allegheny–Ludlum Indus., Inc.*, 517 F.2d 826, 841 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 944, 96 S.Ct. 1684, 1684, 48 L.Ed.2d 187, 187 (1976)).

#### a. *Timeliness of the application*

 Much of the argument to this court, both orally and in brief, focused upon whether the HPPU's and the HAPOA's motions to intervene were timely. The record, however, is not clear that a finding of untimeliness by the district court was the undoing of these motions.[22] If untimeliness was

---

**21.** Rule 24 provides, in relevant part:

(a) Intervention of right. Upon timely application any one shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application any one may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

**22.** Judge Garza's opinion for the panel indicates the cryptic nature of the district court's reasoning. In concluding that the district court denied the applications on the basis of untimeliness, Judge Garza stated:

At the hearing on the applications for intervention in the underlying case, the district judge stated that the appellants, "were entitled to ask to intervene earlier." He also stated that the appellants could not have more time, and that he was "not going to delay this [process]." Finally, the district judge stated, "I don't need an additional party's litigant at the last moment. Your clients have a copy—or had available to them a copy of the Police Chief's December 16th memorandum on the potential settlement."

*Edwards*, 37 F.3d at 1104 (footnote omitted).

Contrarily, Judge DeMoss, in his dissenting opinion points out that

at this hearing, supposedly on the subject of intervention, the court made no reference to Fed.R.Civ.P. 24(a), 24(b) or to any of the factors relating to the subject of intervention under those rules. There was no mention of the *Stallworth* case, nor the four factors for determining a question of timeliness thereunder.

not the basis for the district court's action, we evaluate the motions under Rule 24's standards *de novo.* Assuming the district court did conclude the motions were untimely, it did so without particularizing its findings. While normally we review a finding of timeliness under the abuse of discretion standard, when the district court fails to articulate reasons for its ultimate determination as to timeliness, we must review this factor *de novo. Ceres Gulf,* 957 F.2d at 1202 n. 8. *See also Espy,* 18 F.3d at 1205 n. 2. Thus, that the district court was less than clear on what basis it denied intervention does not change the nature of our review of the timeliness element.

In *Stallworth v. Monsanto Co.,* 558 F.2d 257 (5th Cir.1977), we established four factors to consider when evaluating the timeliness of a motion to intervene.

> *Factor 1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene.*
>
> * * *
>
> *Factor 2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case.*
>
> * * *
>
> *Factor 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied.*
>
> * * *
>
> *Factor 4. The existence of unusual circumstances militating either for or against a determination that the application is timely.*

*Id.* at 264–66.

 There are no absolute measures of timeliness. *Id. See also Espy,* 18 F.3d at 1205. Instead, "[t]imeliness is to be determined from all the circumstances." *Corley v. Jackson Police Dep't,* 755 F.2d 1207, 1209 (5th Cir.1985) (quoting *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973)). Accordingly, these factors merely comprise a framework for the analysis of this threshold consideration. *Id.*

 The first factor focuses on the time lapse between the applicant's receipt of actual or constructive knowledge of his interest in the litigation and the filing of his motion for intervention. The timeliness clock runs either from the time the applicant knew or reasonably should have known of his interest, *Stallworth,* 558 F.2d at 264, or from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit. *Id.* (quoting *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 394, 97 S.Ct. 2464, 2469–70, 53 L.Ed.2d 423 (1977)); *see also Piambino,* 610 F.2d at 1325. From the record before us, it appears that these appellants knew or reasonably should have known of the broad reach of the Consent Decree and its adverse effects on the interests of their members no earlier than February 3, 1993, the date of the official notice of the decree. Accordingly, the HPPU's motion of March 12, 1993, and the HAPOA's oral motion of March 22, 1993, were received by the district court only 37 and 47 days, respectively, after publication of the notice and the decree. In light of our jurisprudence, these delays are not unreasonable. *See, e.g., Espy,* 18 F.3d 1202 (5th Cir.1994) (motion found timely when made within two months of becoming aware that interests were affected); *Association of Professional Flight Attendants v. Gibbs,* 804

---

*Id.* at 1123 (DeMoss, J., dissenting). Continuing, Judge DeMoss notes that the district court's order makes no mention of timeliness, and that no memorandum opinion supporting the order was filed. Finally, Judge DeMoss looked to the district court's Opinion on Denial of Intervention for Appeal for possible insight into the district judge's ruling. He quotes the district court:

These various groups argue that the consent decree does not help them, and worse, it hurts them. They assert that the remedy here injured them. *Their remedy is not to intervene, but to object to the decree. They did, and they were not persuasive.*

*Id.* at 1127–28 (DeMoss, J., dissenting) (emphasis added by Judge DeMoss).

F.2d 318 (5th Cir.1986) (five month lapse found not unreasonable). *Cf. Stallworth,* 558 F.2d 257 (5th Cir.1977) (movants discharged their duty to act quickly by filing petition less than one month after district court entered consent order).[23] Additionally, that these motions were filed prior to entry of judgment favors timeliness, as most of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation. *See Engra, Inc. v. Gabel,* 958 F.2d 643 (5th Cir. 1992); *Corley,* 755 F.2d 1207 (5th Cir.1985); *Jones v. Caddo Parish Sch. Bd.,* 735 F.2d 923 (5th Cir.1984); *Smith v. Missouri Pac. R.R. Co.,* 615 F.2d 683 (5th Cir.1980); *Hefner v. New Orleans Pub. Serv., Inc.,* 605 F.2d 893 (5th Cir.1979), *cert. denied,* 445 U.S. 955, 100 S.Ct. 1639, 64 L.Ed.2d 231 (1980); *United States v. Marion County Sch. Dist.,* 590 F.2d 146 (5th Cir.1979); *United States v. Allegheny–Ludlum Indus., Inc.,* 553 F.2d 451 (5th Cir.1977), *cert. denied,* 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978); *United States v. United States Steel Corp.,* 548 F.2d 1232 (5th Cir.1977); *United States v. Carroll County Bd. of Educ.,* 427 F.2d 141 (5th Cir.1970). Indeed, we have often noted that *"[p]ost-*

*judgment* intervention is rare." *Allegheny–Ludlum Indus., Inc.,* 553 F.2d at 453 (emphasis added).

Appellees argue the organizations seeking intervention and their members were kept informed of the progress of the settlement negotiations by Chief of Police Nuchia at informal meetings commencing in November 1992, some four months before they sought intervention. Further, Appellees contend that all of the would-be intervenors were given detailed notice of the proposed consent decree and its provisions by a circular distributed by the Chief on December 16, 1992, three months prior to the filing of any motions. These arguments, however, are to no avail. On this record, the HPPU, the HAPOA, and their members had no knowledge of the specific terms of the Consent Decree, or its broad-based reforms of the HPD's promotion and seniority systems, until the official notice ordered by the district court was distributed on February 3, 1993. The December circular was neither specific nor definite with respect to the actual terms of the decree, and it indicated no potential infringement on the rights of these nonparties.[24] Also, because no class was ever certi-

**23.** In *Howard v. McLucas,* 782 F.2d 956 (11th Cir.1986), the Eleventh Circuit approved the timeliness of an intervention by non-minority employees in a Title VII case when their motion was filed two weeks after the court gave preliminary approval to the consent decree. The court stated:

We will not require intervenor-appellants to have anticipated a promotional remedy that provides for promotions set aside for class members without a finding that the individual employee so promoted had been subject to discrimination. Intervenor-appellants filed their motion shortly after the proposed consent decree was announced, before the fairness hearing. We do not find the six week delay was dilatory.

782 F.2d at 959–60. Likewise, in *Reynolds v. Roberts,* 846 F.Supp. 948, 953 (M.D.Ala.1994), the court held timely a motion to intervene which was filed "almost immediately after all non-class-member employees received notice of the settlement, and in advance of the fairness hearing."

**24.** Chief Nuchia's circular provided:

Circular

Houston Police Department

 No. 92–1216–1

December 16, 1992

SUBJECT: POTENTIAL SETTLEMENT

The Department has agreed in principle to settle a long standing lawsuit regarding our promotional system. The details of this settlement are still being negotiated; however, I want to give as much correct information as I can now. A proposed version of the agreement will be filed in Federal Court on Tuesday, December 22, 1992. Shortly after that date, I should be able to give you detailed information. The following aspects are being negotiated and are likely to become part of the final settlement.

*Settlement Summary*

1. A number, yet to be determined, of minority police officers and sergeants will be promoted to sergeant and lieutenant. The promotions will be based on the lists established during the years 1982 through 1991.

2. Remedial promotions will be completed over a four to five year period.

3. A statistical analysis will be utilized on future exams for sergeant and lieutenant to identify any racially biased questions. The questions identified as such will be thrown out after the tests.

4. Current and future sergeant and lieutenant promotional lists will remain in existence for two years.

5. The procedures agreed on will be monitored by the Federal Court for ten years.

6. All Class A officers will receive official notification of the Court's consent decree and will be

fied in *Comeaux* or *Kelley*, nor was the class in this case certified until the court approved the decree on March 25, 1993, these applicants had no reason to expect extensive class-based remedies, but instead anticipated only narrowly tailored relief. Finally, with respect to the HAPOA, not until the Decree was published was it made known that a provision like paragraph 61 affecting the transfer of Airport and Park police would be included in the settlement.

 Next, we must assess any prejudice caused the existing parties by the applicants' failure to seek intervention as soon as possible after learning of their interest in the case. This factor is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed. *Stallworth*, 558 F.2d at 265. On February 3, 1993, the date these applicants became aware that this litigation would adversely impact their members' interests, the parties to the litigation had submitted to the district court a proposed final draft of the settlement between them. On the court's order, this draft decree was to be held in abeyance until such time as all potentially affected persons were given notice of the decree and of an opportunity to file objections with the court, and were allowed to argue those objections at a fairness hearing. Accordingly, from the time the proposed decree was submitted to the district court to the conclusion of the fairness hearing on March 22, 1993, the parties to this litigation did nothing except anticipate and prepare to address the possible objections that would be made to the decree. Thus, the delay from February 3 to March 22 caused no prejudice whatever.

 The third factor focuses on the prejudice caused the applicants if their petitions are denied. Assuming without deciding that the notice and hearing procedures in 42 U.S.C. § 2000e–2(n) comply with due process,[25] without intervention the HPPU and the HAPOA, who received notice of the opportunity to and did object to the decree, may be precluded from raising any subsequent independent challenge to the decree once it is implemented and its effects are fully realized. There is nothing in subsection (n) that speaks to the rights of parties who have been denied intervention; and there is nothing in subsection (n) that gives persons to whom notice and opportunity to present objections have been afforded under § 2000e–2(n)(1)(B)(i) the right to appeal the entry of the judgment or order described in § 2000e–2(n)(1)(A). *See Johnson v. Reno*, No. 93–5402, 1994 WL 189071 (D.C.Cir. Apr. 19, 1994) (holding that § 2000e–2(n) does not provide a nonparty non-intervenor a right to appeal).[26] Further, by the terms of the decree, the district court retains jurisdiction over all challenges to the decree for the next ten years, which period "may in the discretion of the Court be extended on motion by any party for good cause shown." Any challenge raised by these applicants must, therefore, be brought before this same court that earlier denied their motions for intervention. If these applicants are not made intervenor-parties to the trial court's consent decree proceedings, and if they have no right to appeal the decree as nonparties, then such decrees become unassailable by these applicants and their privies.

Appellees argue that the opportunity afforded the applicants at the fairness hearing was substantially equal to the benefits of

[given] an opportunity to address their concerns to the Court.

Sam Nuchia
Chief of Police

With respect to the HAPOA's concern over the restriction placed on the transfer of officers from the Airport Police to the position of Class A Police Officer in the HPD, the circular is silent. The first mention of such transfer restrictions is made in the February 3, 1993 notice.

**25.** Because we conclude that the motions for intervention should have been granted, we need not address whether a person who is properly

denied intervention, or who does not seek it, and who is left only to the procedure afforded under § 2000e–2(n) has been afforded due process to protect any interests he has that potentially will be affected adversely by the judgment.

**26.** Under the Court Rules of the United States Court of Appeals for the District of Columbia Circuit, this unpublished disposition has no precedential value. *See* D.C.Cir.R. 28(c). Nonetheless, we find the reasoning of Chief Judge Mikva and his fellow Circuit Judges, Wald and Randolph, to be highly persuasive.

intervention. This contention, however, "ignores the legal rights associated with formal intervention, namely the briefing of issues, presentation of evidence, and ability to appeal." *Espy*, 18 F.3d at 1207. Further, the would-be intervenors had no adequate opportunity to set forth a factual basis for their challenges to the liability or remedial provisions in the Consent Decree. A review of the transcript of the fairness hearing reveals the deficiency of the fairness hearing in this respect.

Appellees were allowed to argue in support of the decree, to call to the witness stand Chief Nuchia and Plaintiffs' statistical experts, and to submit into evidence some twenty-one exhibits. The applicants, on the other hand, were allowed to cross-examine these witnesses, but did not have the benefit of prior discovery and were precluded from calling rebuttal witnesses of their own. In fact, the HPPU was prepared to have Dr. Robin Sickles of Rice University testify as to the unreliability of the several statistical analyses submitted and relied upon by Appellees. The district court, however, declined to allow Dr. Sickles to take the stand. Instead, it required the HPPU to proffer a synopsis of the doctor's testimony and to submit the affidavit from which HPPU's counsel derived the substance of the proffer. HPPU's counsel complained because the affidavit had been hastily prepared during the intervening one-day period between the hearing on the motions for intervention and the fairness hearing in an attempt to facilitate the district court's expressed intention to speedily move through the fairness hearing. Further, HPPU's counsel sought leave to supplement the affidavit of Dr. Sickles with testimony that the doctor would have given to rebut the statements made by Plaintiffs' expert, Dr. Friedland, and other statistical information provided the objectors on the morning of the fairness hearing. Such leave was denied.

The HPPU also was prepared to offer the live testimony of Mike Howard, the organization's president, who would rebut several statements made by Chief Nuchia, as well as the testimony of several police officers on the impact of the implementation of the decree. The district court refused to allow any of these witnesses to take the stand, and instead ordered HPPU's counsel to submit these persons' affidavits. Note, however, that Mr. Howard's affidavit did not contain his rebuttal to the Chief's testimony, as the Chief's comments were not available to the objectors prior to his taking the stand at the hearing.

Lastly, the applicants were allowed to argue their objections to the court, but did so without the benefit of any discovery. In fact, the objectors were given access to the challenged exam questions and answers, which were previously subject to a confidentiality order issued by the district court, only two days prior to the fairness hearing. The perfunctory process employed in this case belittles our notion of fairness. That these applicants were deprived not only of the opportunity to participate in this proceeding with the rights and privileges of full parties, but also of the opportunity to adequately prepare and present objections to the proposed decree, precludes us from concluding that the district court's denial of intervention was harmless.[27]

 Finally, we must consider any unusual circumstances surrounding these motions. The HPPU motion was filed on the last day on which objections to the *proposed* decree could be filed for consideration at the subsequent fairness hearing—i.e., the HPPU complied with the district court's own timetable for considering the decree. We must assume that the district court intended to conduct the fairness hearing in good faith— i.e., impartially receiving objections, dutifully evaluating each, and sincerely accepting the possibility that a meritorious concern may be raised that could require revision of the proposed decree. In other words, at the time of the fairness hearing, we assume the terms and conditions of the decree remained flexible. Because we think these assumptions are a correct view of the process, we do not think either Appellees or the district court was justified in believing that the Consent

---

27. "Nothing in [§ 2000e–2(n)] shall be construed to ... authorize or permit the denial to

any person of the due process of law required by the Constitution." 42 U.S.C. § 2000e–2(n)(2)(D).

Decree was at this time in its final form. Instead, for § 2000e–2(n) to serve its purpose, the court administering its dictates must do so in a manner that affords objectors a fair opportunity to impact the litigation. After all, a fairness hearing, to mean anything at all, must be fair. That the HPPU sought to intervene while the decree was before the public for review and comment, and thus not yet set in stone, militates strongly in favor of finding the motions were timely.

As stated earlier, the *Stallworth* factors are not a formula for determining timeliness. Nonetheless, because we find that the analysis of each element weighs in favor of the applicants, we conclude that the HPPU's and the HAPOA's motions to intervene in the litigation underlying the Consent Decree were timely filed.

### b. Interest of the applicant

■ To demonstrate an interest relating to the property or subject matter of the litigation sufficient to support intervention of right, the applicant must have a "direct, substantial, legally protectable interest in the proceedings." *United Gas Pipe Line Co.,* 732 F.2d at 463 (quoting *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1124 (5th Cir.), *cert. denied,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970)). This requires that the interest asserted be one that the substantive law recognizes as belonging to or being owned by the applicant. *Id.* at 464.

■ The HPPU's main complaint is that the Consent Decree adversely affects the interests of its members in having equal access to a promotion system and promotion opportunities within the HPD for the ranks of Sergeant and Lieutenant without reference to race, color, or national origin. On facts almost identical to this case, the Eleventh Circuit concluded that similarly situated applicants for intervention possessed the requisite interest. *Howard v. McLucas,* 782 F.2d 956 (11th Cir.1986). The *Howard* court stated:

> A vested interest in one of the ... target promotions is not required. Intervenor-appellants claim they are ineligible for these promotions solely on account of race because nondiscriminatee class members are eligible for the target positions. We hold this is sufficient to confer standing to intervene.

*Id.* at 959 (and cases cited therein). Citing *Howard,* this court also has recognized that "[a] decree's prospective interference with promotion opportunities can justify intervention." *Black Fire Fighters Ass'n of Dallas v. City of Dallas,* 19 F.3d 992, 994 (5th Cir. 1994). Accordingly, the HPPU satisfies this element.

■ The HAPOA's complaint is much more specific. It asserts that paragraph 61 of the Consent Decree will confine members of the HAPOA to the Airport Police and deny them the opportunity to transfer to HPD as Class A Police Officers for the duration of the decree, thereby limiting their career and promotion opportunities. This restriction, continues the HAPOA, also directly conflicts with an earlier state court judgment arising from a suit between the HAPOA and the City that established the HAPOA's members' right to make such transfers under Texas state law.[28] We conclude that the HAPOA too has an interest in this litigation sufficient to justify intervention.

### c. Practical impairment of ability to protect interest

■ Rule 24(a) was amended in 1966 to no longer require a showing by the applicant for intervention that he will be bound by the disposition of the action. The current

---

**28.** In the City's summary judgment motion in *Hughes v. City of Houston,* No. 92–41813 (Tex. Dist.Ct. Harris County), the City asserts:

> Even if the judgment [in *Hughes v. City of Houston,* No. 86–35284] could be interpreted to allow the transfer of Airport Police into Class "A," Paragraph 61 of the federal consent decree issued in *Edwards v. City of Houston,* specifically prohibits the inter-class transfer of the various classes of Police Officers in the City of Houston.... Plaintiffs[, members of the Airport Police,] are thereby precluded from lateral transfer into Class "A" by virtue of the federal consent decree.

Appellees' Supp.Rec.Ex.Tab 1 (Def.'s Motion Summ.J. at 3, *Hughes v. City of Houston,* No. 92–41813 (Tex.Dist.Ct. Harris County)).

practical impairment standard represents a liberalization of the prerequisites to intervention. *Texas E. Transmission Corp.*, 923 F.2d at 413; *United States v. City of Jackson*, 519 F.2d 1147, 1150 (5th Cir.1975). While this more generous measure of impairment favors would-be intervenors, the HPPU and the HAPOA do not require such lenience. Instead, because of the preclusive effects of 42 U.S.C. § 2000e–2(n), both applicants, if denied intervention, in essence will be bound by the Consent Decree and limited in their future promotion opportunities.

### d. Adequacy of representation

■ The final requirement for intervention of right under Rule 24(a)(2) is that the would-be intervenor's interest not be adequately represented by existing parties. The burden of establishing inadequate representation is on the applicant for intervention. *See Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir.1994); *Espy*, 18 F.3d at 1207. The Supreme Court has decided "[this] requirement ... is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972).

■ Although the applicant's burden of showing inadequate representation is minimal, "it cannot be treated as so minimal as to write the requirement completely out of the rule." *Cajun Elec. Power Coop.*, 940 F.2d at 120 (quoting *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir.1984)). Accordingly, our jurisprudence has created two presumptions of adequate representation. First, when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity. *Id.* at 241. To overcome this presumption, the applicant must show "that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]." *Hopwood*, 21 F.3d at 605 (quoting *Environmental Defense Fund*,

*Inc. v. Higginson*, 631 F.2d 738, 740 (D.C.Cir.1979)). This presumption, and the heightened showing required to overcome it, is restricted, however, to those suits involving matters of sovereign interest. *Id.* As the City appears in the present litigation in its capacity as an employer, and not in its capacity as a sovereign, this presumption of adequate representation is inapplicable.

■ The second presumption of adequate representation arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit. In such cases, the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption. *United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755, 757 (5th Cir. 1995) (citing *Kneeland*, 806 F.2d at 1288); *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984); *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir.1978). A review of the record reveals a sharp disalignment between the parties to the litigation and the HPPU and the HAPOA. While the parties seek to correct and compensate for promotional practices of the HPD alleged to discriminate against African–American and Hispanic–American police officers, the HPPU argues that these practices have not been adequately shown to result in such discrimination and that the City failed to challenge these claims. Thus, the filings in this case indicate that Appellees seek to change the existing promotional policies and procedures of the HPD, while the HPPU believes they may need no adjustment. As to the HAPOA's attack on paragraph 61 of the Consent Decree, it is clear that neither the City nor Plaintiffs represent the interest sought to be protected by the HAPOA. The City has challenged the HAPOA's efforts to obtain recognition of its members' right to transfer to the HPD previously in state court and attempt to do so again through this paragraph in the Decree. Likewise, Plaintiffs seek only to protect the rights of African–American and Hispanic–American Class A peace officers already members of the HPD. If the members of the Airport Police were allowed to laterally transfer into the HPD, those individuals would become addi-

tional competitors for the positions sought by Plaintiffs. Thus, because neither the HPPU nor the HAPOA seek the same ultimate objective as the existing parties, no presumption of adequate representation may be applied.

Having dispelled both possible aides to a finding of adequate representation, we revert to the *de minimis* standard of proof required by the *Trbovich* Court to establish inadequate representation. The HPPU and the HAPOA have satisfactorily shown that their interests in this litigation "may be" insufficiently represented, enough so to satisfy this final requirement for intervention under Rule 24(a)(2).

Having applied the principles established under Rule 24(a)(2) for intervention of right to the facts of this case, we conclude that the district court erred in denying intervention in the underlying case to the HPPU and the HAPOA.

### 2. Rule 24(b) Permissive Intervention

The HPPU and the HAPOA argued, in the alternative, that they should have been allowed to intervene permissively under Rule 24(b). Because we conclude that these applicants were entitled to intervene of right into these proceedings, we need not discuss the merits of this contention.

### V. Conclusion

Based on the foregoing discussion, the district court's order of March 25, 1993, denying the HPPU's and the HAPOA's motions to intervene in the consent decree proceedings, is REVERSED. In conjunction therewith, we VACATE the district court's judgment of that same date approving the Consent Decree and REMAND the cause with instructions to the district court to permit the Houston Police Patrolmen's Union, the Houston Airport Police Officers' Association, and their

members to intervene in this suit, to allow them appropriate discovery, and to conduct a new fairness hearing. Our holding in these respects obviates the need for us to discuss the propriety of the district court's orders denying the several motions to intervene for purposes of appeal only [29] and approving the Consent Decree.

All undecided motions pending before this Court are DENIED.

REYNALDO G. GARZA, Circuit Judge, with whom, BENAVIDES, STEWART, PARKER and DENNIS, Circuit Judges, join dissenting:

I respectfully dissent, not only because, as I will show below, I think that our original opinion was correct, but also because we are engaged in an exercise in futility, wasting precious judicial time of a busy district court when the result on remand will certainly be the same.

On the findings made by the court below that the interventions were not timely, the majority blames the court below in not giving the reason for the untimeliness. The court told those that were trying to intervene that they had received a copy of the police chief's December 16th memorandum on the potential settlement. That was almost three full months before they actually intervened. The appellants here did not make any attempt to go before the city council that was working on the Consent Decree to give them input, nor did they intervene in this case at the time. That to me was sufficient reason for the court below to say that their intervention was untimely.

The parties that wanted to intervene were given notices and allowed to participate in the Fairness Hearing under section 2000e–2(n). While it is true that some of the objectors to the Consent Decree wanted to pres-

---

**29.** Any resolution of the appeals of the district court's May 20, 1993 order denying the several motions to intervene for purposes of appeal only would be vain. The HPPU is afforded intervention in the underlying case, and this holding likewise protects the interests of the HPOA's members. *See* note 20, *supra.*

As for the original *Comeaux* plaintiffs, we have concluded that they have lost the right to pursue

their non-test-promotion related and pre–1982 test-promotion related claims, and that Bennie Green and Willie Fields are named plaintiffs as to their post–1981 test-promotion related claims who need not intervene in order to appeal the Consent Decree. Thus, none of the appellants of this order would benefit by our resolving the propriety of the district court's action.

ent some live evidence, the court told them to do so by affidavit. We are convinced that they had an opportunity to present all the evidence that they wanted to, if not by live witness through affidavit. It is doubtful that through intervention they will be in a position to present any other evidence that they could not have presented at the Fairness Hearing. Therefore, if error was committed by the court in not allowing intervention, it was harmless error.

We are convinced that nothing in the form of evidence for or against the Consent Decree can be presented that was not available to be presented at the Fairness Hearing.

Under these circumstances it is an exercise in futility because the court below will still approve the Consent Decree with the modification that the court made in it.

We will therefore be back where we were when we went en banc.